RAMIREZ, J.
Active Spine Centers, LLC appeals an order granting summary judgment in favor of State Farm Fire & Casualty Company in this declaratory judgment action. Active Spine claims that it was entitled to compensation for chiropractic services provided to patients who were insured with State Farm. We affirm because the trial court properly found that it was without authority to rewrite section 456.0375, Florida Statutes (2001), in order to carve out an exception not created by the Legislature or the Florida Department of Health.
Active Spine Centers, LLC, a chiropractic clinic in Miami-Dade County, Florida, has been providing medical services to individuals who have been injured in motor vehicle accidents and who are entitled to Personal Injury Protection benefits under automobile insurance policies. In 2001, the Florida Legislature enacted a registration statute, section 456.0375, Florida Statutes, which required that certain health care clinics, including chiropractic clinics, register with the Florida Department of Health.[1] Evidently, intending to allow clinics time to comply with new registration duty, the legislature required “[t]he clinic to file the registration form with the department within 60 days after the effective date of this section or prior to the inception of operation.” § 456.0375(2)(b)l, Fla. Stat. (2003). The statute further provided certain exceptions to the registration requirement, including the following:
For purposes of this section, the term “clinic” does not include and the registration requirements herein do not apply to:
(6) Sole proprietorships, group practices, partnerships, or corporations that provide health care services by licensed health care practitioners pursuant to chapte[r] ... 460 [Chiropractic Medicine] ... which are wholly owned by licensed health care practitioners ..., so long as one of the owners who is a licensed health care practitioner is supervising the services performed therein and is legally responsible for the entity’s compliance with all federal and state laws....
§ 456.0375(l)(b)6, Fla. Stat. (2003).
The statute also provides that:
All charges or reimbursement claims made by or on behalf of a clinic that is required to be registered under this section, but that is not so registered, are unlawful charges and therefore are non-compensable and unenforceable.
§ 456.0375(4)(a), Fla. Stat. (2003).
Initially, the clinic was not required to register with the department because Dr. Michael K. Scholz, the owner/supervisor of the clinic, was already a licensed chiropractor; thus, the registration exception carved out by subsection (l)(b)6 applied. However, on January 9, 2003, Dr. Scholz died in an automobile accident.
Promptly after Dr. Scholz’s death, the clinic engaged the services of Dr. Raymond Ruszkowski, a licensed chiropractor, to provide. medical services to the clinics’ existing patients. The clinic then admittedly operated without registering with the department for almost two months. On March 8, 2003, the clinic submitted an application for registration with the department, which was issued on March 11, 2003. However, during the time that it was not registered, from January 9, 2003 through March 11, 2003, the clinic provided medical service to twenty six patients who claimed entitlement to PIP benefits under automobile insurance policies issued *243 by State Farm. State Farm denied the claims because the clinic was not registered with the department.
The clinic filed the underlying declaratory judgment action seeking a determination that, under section 456.0375, the clinic was entitled to receive compensation for the chiropractic services it provided to the twenty six State Farm insureds between January 9, 2003 (the date of Dr. Scholz’ death) and March 11, 2003 (the date the clinic’s registration was issued). Both sides moved for summary judgment.
The clinic argued that “the sixty (60) day grace period prescribed by § 456.0375(l)(b)l, Florida Statutes, for the registration of existing clinics should be applied to the registration of an existing, exempt clinic whose practitioner/owner, such as Dr. Michael Kenneth Scholz, is killed.” State Farm argued that any treatment allegedly rendered by the clinic during the relevant time period “was illegal because of [the clinic’s] failure to satisfy the Licensing Statute” and that “the clear language of the Registration statute and the legislative intent behind the Statute provide no support for [the clinic’s] position.” After a hearing on the parties’ motions, the trial court entered summary judgment in State Farm’s favor, reasoning that the clinic violated the registration statute, and that as a result of the violation, the services the clinic provided during the period of the violation were not lawfully rendered. Because the services were not lawfully rendered, State Farm was not obligated to pay the clinic for the services under State Farm policies or Florida’s PIP statute (section 627.736(5)(a), Fla. Stat. (2005), requires State Farm to pay only for “lawfully” rendered treatment).
The issue now before this Court is one of statutory construction. It is a pure question of law, requiring a de novo review. See State v. Joubert, 847 So.2d 1023, 1025 (Fla. 3d DCA 2003). Whether it was error to enter summary judgment in State Farm’s favor is also reviewed de novo. See Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
The clinic contends that section 456.0375(l)(b)l — the grace period provision — should be interpreted as giving the clinic sixty days from Dr. Scholz’ death to register with the department. It argues that until Dr. Scholz died on January 9, 2003, the clinic was not a “clinic” within the meaning of the registration statute. Thus, the statute did not become effective with regard to the clinic until January 9, 2003. The clinic contends that any other result would bestow a windfall to State Farm.
The clear language of the statute provides a sixty-day window to register only when the requirement to register was first enacted. Prior to that time there was no registration requirement. The statute then required all non-exempt clinics to register “within sixty days after the effective date of this section or prior to the inception of operation.” § 456.0375(2)(b)l, Fla. Stat. (emphasis supplied). When the clinic filed its application on March 11, 2003, it obviously did not register within 60 days after the effective date of the statute, which had been in effect since 2001. Thus, the clinic was required to file the registration form “prior to the inception of operation.” Id. Even if Active Spine was not a “clinic” prior to Dr. Scholz’s death, as a new clinic it was required to file the form before the start of its operation.
Here, the registration statute unambiguously stated that the clinic was required to register unless one of the exceptions applied. Because the clinic’s owner was a licensed health care practitioner who was supervising the services performed at the clinic and who was legally responsible for *244 the entity’s compliance with all federal and state laws, the clinic fell within one of the exceptions. However, when the owner died in the car accident, the clinic was no longer in compliance with the registration statute.
We agree that on its face, the registration statute does not seem to contemplate the sudden and unexpected death of an owner/licensed supervising healthcare professional. The clinic would thus have us rely on the intent of the legislature when it enacted the registration statute, which is to reduce fraudulent claims in the healthcare industry. However, the statute does contemplate new clinics filing registration forms, and it clearly mandates that they do so “before the inception of operation.” Just as the clinic ceased its operation until it replaced Dr. Scholz with Dr. Ruszkow-ski, it should have filed its registration form before reopening its operation.
Florida’s rules of statutory construction require that language be given its plain and ordinary meaning when the language is clear and unambiguous. See Metropolitan Dade Cty. v. Milton, 707 So.2d 913, 915 (Fla. 3d DCA 1998). Courts are not permitted to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power. Id. at 914-915. See also Oruga Corp., Inc. v. AT & T Wireless of Fla., Inc., 712 So.2d 1141, 1143-44 (Fla. 3d DCA 1998). The language of the registration statute makes it clear that once the clinic lost its exemption, it was required to cease its operations until it registered with the department. Accordingly, the clinic is not entitled to be paid for the unlawful services that were provided during the period in question.
Moreover, the legislative intent behind the registration statute and chapter 456 as a whole supports summary judgment in State Farm’s favor. The registration statute was enacted to curtail chiropractic treatment at unlicensed clinics staffed by untrained personnel. See Final Report of the Fifteenth Statewide Grand Jury, Case No. 95,746, Supreme Court of Florida (Nov. 16, 2000). The intent of the registration statute was to preserve “the health, safety and welfare of the public under police powers of the state” because unregulated clinics could “endanger the health, safety, and welfare of the public.” See § 456.003(2), Fla. Stat. (2001). Only by enforcing the registration statute in circumstances such as this can Florida citizens be protected.
Pursuant to the registration statute’s authority, the department issued Florida Administrative Code Rule 64-2.001, as well as a later revision to that rule. For initial registration, the revised rale adopted the statutory sixty-day period from October 1, 2001 (the effective date of the registration statute). The rule further provided that the sixty-day period was inapplicable for registration “prior to the inception of the clinic’s operation.” See Fla. Admin. Code R. 64-2.001(l)(a). With regard to a change in status, the rule provided that:
In order to maintain a valid registration, each clinic shall within thirty (30) days of a change to the clinic’s registration requirements, notify the Department of Health to amend the clinic’s registration.
Fla. Admin. Code R. 64-2.001(2)(a).
The clinic now contends for the first time on appeal at oral argument that it was not given the thirty days outlined in the code. This was not argued to the trial court below, thus we will not entertain it on appeal. See Tillman v. State, 471 So.2d 32, 35 (Fla.1985) (“In order to be preserved for further review by a higher court, an issue must be presented to the *245 lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.”).
Accordingly, because courts do not have the authority to rewrite the registration statute to create a new exception not created by the legislature or the Florida Department of Health, the trial court’s order granting summary judgment in favor of State Farm and denying the clinic’s motion for summary judgment is affirmed.
Affirmed.

. The section was repealed effective March 1, 2004, and replaced by section 400.9905, Florida Statutes (Supp.2004), which permits no exemptions to the licensing requirement.