[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12181
_____

D.C. Docket No. 6:10-cv-01103-GAP-GJK


STATE FARM FIRE & CASUALTY COMPANY,

Plaintiff - Appellee
Cross-Appellant,

versus

SILVER STAR HEALTH AND REHAB,
JUDITH MCKENZIE,
JEAN COLIN,

Defendants - Appellants
Cross-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(August 6, 2013)

Before CARNES, Chief Judge, WILSON and EBEL,[*] Circuit Judges.

PER CURIAM:

The Florida Health Care Clinic Act requires that all medical clinics operating in Florida be licensed by the State unless they fall within a statutory exemption. See Fla. Stat. § 400.991. One of the exemptions is for clinics that are "wholly owned by one or more licensed health care practitioners." Id. § 400.9905(4)(g). That exemption is at the heart of this case. State Farm Fire & Casualty Company contends that Silver Star Health and Rehab and one of its owners, Dr. Judith McKenzie, concealed the ownership interest of Jean Colin, who is not a licensed health care practitioner, so that Silver Star would appear to qualify for the wholly owned exemption, thereby evading the Act's licensing requirements. The reason that it matters to State Farm is, as we will explain, if Silver Star does not qualify for the "wholly owned" exemption, it has been operating unlawfully under Florida law, which gives State Farm a defense to charges and claims Silver Star has made for services it rendered the insurance company's insureds.

## I.

Silver Star was a chiropractic clinic located in Orlando, Florida. (The record does not indicate if it is still operating.) Some of its patients were insured by State

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation.

Farm.  When a patient's treatment was covered by a State Farm insurance policy, the patient would sign an assignment of benefits form that allowed Silver Star to bill State Farm directly for the treatment it provided.  Between May 2008 and December 2009, State Farm paid Silver Star more than $151,000.  Between December 2009 and March 2010, Silver Star billed State Farm an additional $86,000 that it has not yet paid.

State Farm's position is that it does not have to pay that $86,000 because the treatment was not "lawfully provided" since Silver Star did not comply with the licensing statute.  Florida law provides that an insurer is not required to pay for medical treatment that is not "lawfully provided."   See id. §§ 400.9935(3), 627.736(1)(a)1.  State Farm filed a lawsuit against Silver Star, McKenzie, and Colin[1] in federal district court seeking:  (1) a declaratory judgment that it is not required to pay the outstanding bills from Silver Star; and (2) damages for unjust enrichment of more than $151,000, the amount that State Farm has already paid Silver Star.  The unjust enrichment count was tried to a jury, which returned a verdict for State Farm.  The district court entered judgment on the jury verdict, and the court also entered the declaratory judgment that State Farm sought.  Silver Star has appealed the final judgment against it and State Farm has cross-appealed (on a discovery issue and a jury instruction issue) as a precautionary measure.  We begin

---

[1] We refer to the three defendants collectively as "Silver Star," unless the context requires an individual reference.

by addressing Silver Star's contentions because we will need to reach State Farm's cross-appeal only if Silver Star prevails.

## II.

Silver Star has never contended that it was licensed under the Florida Health Care Clinic Act at the time this lawsuit was filed. Nor has it ever contended that any exemption other than the "wholly owned" one applies to it. Still, Silver Star raises four issues in its appeal. It contends that: (1) Florida law does not provide State Farm with a judicial remedy for a violation of the licensing requirements of the Health Care Clinic Act; (2) even if Florida law does provide State Farm with a judicial remedy, a cause of action for unjust enrichment is unavailable because State Farm and Silver Star were in privity of contract; (3) the district court's jury instruction on the meaning of "wholly owned" misstated the law; and (4) the district court abused its discretion by apportioning costs jointly and severally among the three defendants.

### A.

Silver Star's basic contention is that Florida law does not provide State Farm with a judicial remedy. According to Silver Star, the only two ways that the licensing requirements of the Florida Health Care Clinic Act may be enforced are as: (1) criminal penalties for people who violate them, Fla. Stat. § 400.993, and (2)

administrative penalties imposed by the Florida Agency for Health Care Administration, id. § 400.995.  Its position is that because the Act does not expressly state that a violation of its licensing requirements can be determined by a court in a civil action, the district court erred by allowing State Farm's lawsuit to proceed.

We disagree with Silver Star, as did the district court.  Although the Act does not expressly refer to a judicial remedy, it provides that "[a]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable."  Id. § 400.9935(3).  In addition, Florida's no fault statute provides that "[a]n insurer . . . is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered . . .," id. § 627.736(5)(b)1.b., and it defines "lawful" as "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services and treatment," id. § 627.732(11) (emphasis added).  The state law administrative requirements part of that definition covers the licensing requirements of the Florida Health Care Clinic Act, the plain language of which plainly says that a charge or reimbursement claim by an unlicensed clinic that is not exempt from licensing is "unlawful . . .

5

noncompensable and unenforceable." Because courts are traditional forums for determining the lawfulness, compensability, and enforceability of claims, it would make no sense to read into a statute a provision that courts lack the authority to decide the crucial question on which the lawfulness, compensability, and enforceability of a claim depends, which in this case is whether the exemption Silver Star asserts applied, excusing its failure to obtain a license.

Active Spine Centers, LLC v. State Farm Fire & Casualty Co., 911 So. 2d 241 (Fla. 3d DCA 2005), supports our interpretation of the Florida acts. See McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002) ("[A]bsent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.") In the Active Spine Centers case, State Farm denied payment of claims for medical treatment on the grounds that the clinic that had provided the treatment did not comply with Florida's licensing statute.[2] 911 So. 2d at 242–43. The clinic sought a declaratory judgment that it was entitled to be paid. Id. at 243. The trial court entered summary judgment in favor of State Farm because the clinic did not comply with the licensing statute, and that judgment was affirmed on appeal. Id. at 243, 245.

---

[2] Active Spine Centers involved an earlier version of Florida's licensing statute, but that version differs from the current one only in ways that do not matter to this appeal.

6

As for the unjust enrichment claim, Florida courts have long recognized a cause of action for unjust enrichment "to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." Butler v. Trizec Props., Inc., 524 So. 2d 710, 711 (Fla. 2d DCA 1988). State Farm claimed in this case that Silver Star was unjustly enriched because it accepted payments from State Farm that it was not entitled to under Florida law. If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment. See Standifer v. Metro. Dade Cnty., 519 So. 2d 53, 54 (Fla. 3d DCA 1988) (recognizing the cause of action for unjust enrichment applied where a humane society kept all the proceeds from the sale of animals it seized from the plaintiff and Florida law provided that the humane society may retain "only the expenses it has incurred in respect to the sale, care, and provision for the animals, with the remainder to go to the owner").

Under Florida law State Farm was entitled to seek a judicial remedy to recover the amounts it paid Silver Star and to obtain a declaratory judgment that it is not required to pay Silver Star the amount of the outstanding bills. The district court did not err by rejecting Silver Star's arguments to the contrary.[3]

B.

---

[3] Because Florida law is not unclear on these points, we DENY Silver Star's motion that we certify questions about them to the Florida Supreme Court.

7

Silver Star next contends that State Farm cannot prevail on a cause of action for unjust enrichment because that cause of action does not exist between two contracting parties under Florida law and Silver Star and State Farm were in privity of contract.  See Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("[A] plaintiff cannot pursue a . . .claim for unjust enrichment if an express contract exists concerning the same subject matter.").  According to Silver Star, because some of the patients executed assignments of benefits to State Farm, allowing Silver Star to bill State Farm directly for the cost of the treatment, the two entities were in privity of contract.  We disagree.  Under Florida law the assignment of benefits "does not entail the transfer of any duty to the assignee. . . ." Shaw v. State Farm Fire & Cas. Co., 37 So. 3d 329, 332 (Fla. 5th DCA 2010) (en banc), overruled on other grounds by Nunez v. Geico Gen. Ins. Co., No. SC12-650, — So. 3d —, 2013 WL 3214401, at *8 (Fla. June 27, 2013).  Because Silver Star did not assume any contractual duty to State Farm, there was no privity of contract between the two and State Farm would not have a cause of action against Silver Star for breach of contract.  State Farm's only cause of action for the amount that it has already paid State Farm is the one it pursued in this case — unjust enrichment. See Ocean Comms., Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("A contract implied in law, or quasi contract, operates when there is no contract to provide a remedy where one party was unjustly enriched, where that party received

8

a benefit under circumstances that made it unjust to retain it without giving compensation.") (quotation marks omitted).

## C.

Silver Star also contends that the district court erroneously instructed the jury on the meaning of "wholly owned."  The district court instructed the jury, in relevant part, that:

> Several factors are commonly tied to the ownership of a business entity:
>
> (1) Ownership of the stock of a corporation and the exercise of corporate powers
> (2) The extent of any capital investment in the business
> (3) The right to profit from the business and the risk of loss
> (4) The power to sell the business or cause it to cease operations
> (5) The extent to which an individual participates in the management and control of the business operations.

Silver Star contends that those five factors "misstate the law and are misleading" because Florida law does not require that an owner of a corporation do any of those things to prove ownership.  But the instructions do not state that all or even some of those factors were required.  They say, instead, that the factors were "commonly tied" to ownership of a business.

"[W]e review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the party who objects to them."

9

<u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233, 1283 (11th Cir. 2008) (quotation marks omitted).  Even though our review is <u>de novo</u>, "the standard is deferential."  <u>Id.</u> (quotation marks omitted).  "As long as the instructions accurately reflect the law, the district court is afforded wide discretion as to the style and wording employed. . . ."  <u>Id.</u>  (quotation marks omitted).  "When the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism."  <u>Id.</u> (quotation marks omitted).  We reverse only "where we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations."  <u>Id.</u> (quotation marks omitted).

Silver Star argues that the jury instructions emphasized control of the business, which it says was improper because Florida law does not require that an owner of a business exercise control over it.  But the court made it clear to the jury that while it should consider the five factors, "no single factor is necessarily more significant than the others."  And it also instructed the jury that:  "[A]n owner may delegate responsibilities to another, yet still not cede actual 'ownership.'  If a person has the right to possess and control a business, he or she may still be the 'owner' of it, <u>regardless of the extent to which that person is involved in its affairs</u>."  (Emphasis added.)  Taken as a whole, those instructions do not improperly emphasize control and they do not leave us with "a substantial and

10

ineradicable doubt as to whether the jury was properly guided in its deliberations." Id. (quotation marks omitted). They are therefore not a basis for reversing the judgment of the district court. Id.

### D.

Finally, Silver Star argues that the district court abused its discretion by imposing costs jointly and severally among the three defendants. The default rule is that costs are to be imposed jointly and severally, and the burden is on the party seeking to avoid that to introduce evidence justifying apportionment and persuade the court to do that. In re Paoli R.R. Yard PCB Litigation, 221 F.3d 449, 469 (3d Cir. 2000). Silver Star failed to do that. The district court explained that joint and several imposition of costs was justified because "[t]his was, in essence, a conspiracy" among the three defendants to evade the licensing requirements of the Florida Health Care Clinic Act. There was no abuse of discretion.

**AFFIRMED.**[4]

---

[4] Because we affirm the judgment of the district court, State Farm's cross-appeal is DISMISSED AS MOOT.

11