[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12014

_____

D.C. Docket No. 8:11-cv-01368-JDW-TGW

TOUCAN PARTNERS, LLC,
a Florida Limited Liability Company,

Plaintiff,

NARCONON SPRING HILL, INC.,
a Florida Corporation,

Plaintiff-Appellant,

versus

HERNANDO COUNTY, FLORIDA,
a political subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 1, 2014)

Before WILSON, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

This case requires us to determine whether the district court erred by instructing the jury that a plaintiff alleging intentional discrimination under the Fair Housing Act (FHA) has a duty to mitigate damages.  We conclude the district court erred by giving a mitigation instruction on this record because (1) no evidence regarding mitigation was adduced at trial and (2) even if mitigation is an available defense under the FHA, the proposed mitigation in this case was not reasonable.  Accordingly, we reverse the district court's judgment and remand for a new trial on damages.

## I.  BACKGROUND

In 1992, the Hernando County Planning and Zoning Commission approved an application for a special use permit for a development in Spring Hill, Florida, known as the Ponderosa Pines development.  The development was approved as an adult congregate living facility and was located on an 11.6 acre lot in an area zoned for residential use.  The 1992 permit authorized 150 beds on the property, but required submission of another application to Hernando County (the County) for approval to build any structures not constructed within five years.  Sometime after the 1992 permit was issued, the property was divided into smaller lots.

In 2008, Eric Mitchell, a chemical dependency counselor, decided to open Narconon Spring Hill, Inc. (Narconon).  Narconon is a drug and alcohol rehabilitation organization focused on helping individuals recover from substance

2

abuse and addiction without the use of prescription medications.  In conjunction with the owner of Toucan Partners, LLC (Toucan Partners), Narconon decided to open the Spring Hill facility on one of the parcels from the former Ponderosa Pines development which had two structures on it covered by the 1992 special use permit.  Prior to opening the facility, Narconon obtained a zoning verification letter from the County indicating that, consistent with the 1992 special use permit, the property could be used to provide drug and alcohol rehabilitation services.  Narconon subsequently opened the Spring Hill facility on December 15, 2008, and experienced an immediate need for additional space.

Accordingly, on January 28, 2009, Toucan Partners and Narconon submitted an application to the County for permission to build additional structures on the property.  The application sought permission to construct three new buildings in order to increase the number of beds from 22 to 54, and also sought approval to build outdoor recreational facilities.  The staff of the County planning department concluded the permit application should be approved, and the chief of the planning department recommended approval to the Planning and Zoning Commission.  After the Planning and Zoning Commission unanimously approved the application, the Board of County Commissioners (the Board) chose to review the commission's decision.  On June 9, 2009, the Board held a hearing at which it discussed Narconon's application.  At the hearing, community members objected to the

3

proposed expansion, voicing concern over Narconon's clientele. The Board ultimately denied the application.

On June 20, 2011, Narconon and Toucan Partners filed a complaint against the County, alleging in pertinent part that the County intentionally discriminated against them in violation of the FHA when it denied their application to expand the Spring Hill facility.[1]

At trial, Tammy Strickling, Narconon Spring Hill's chief executive officer, testified that the facility had two 2,500 square foot buildings on site. One of the buildings was used as a dormitory for male clients and contained dining and student lounge facilities, while the other building served as the dormitory for female clients and housed several programs. Strickling testified that Narconon also rented two houses in the community for staff and training housing and explained that, when the onsite facilities reached capacity, the houses would be used to accommodate clients as necessary. Strickling further testified that she rented a van to transport overflow clients back and forth and that the clients would travel from the onsite to offsite locations three times per day.

---

[1] The complaint also alleged that the County (1) violated the FHA by failing to provide a reasonable accommodation, (2) intentionally discriminated in violation of the Americans with Disabilities Act (ADA), and (3) violated the ADA by failing to provide a reasonable accommodation. These claims are not before us on appeal because the jury found against Narconon on its reasonable accommodation claims, and Narconon has abandoned its intentional discrimination claim under the ADA by failing to raise any argument on the issue in its initial brief. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

Narconon's damages expert, Lloyd Morgenstern, testified Narconon suffered $6,244,108 in damages from not being able to expand due to the denial of its 2009 application. Morgenstern also estimated that from 2012 onward, Narconon would lose approximately $731,422 per year due to the denial of its application to expand. Conversely, the County's damages expert, J. Clay Singleton, testified that Narconon did not suffer any damages. Singleton explained that Narconon's proposed expansion would cost at least an additional $140,000 in rent per year and that it would take a substantial amount of time for the facility to generate enough clients to pay for the expansion. In addition, Singleton assumed a slower growth rate in clientele than Morgenstern, and Singleton's calculations extended only to the year 2014.

At the charge conference, the County requested a mitigation of damages instruction and indicated it was pursuing the issue as an affirmative defense. After Narconon objected to the instruction, the County explained that:

> [T]he mitigation argument is what we've heard in trial, which is that Narconon, while enjoying this property, has the ability to expand its service by renting homes, having their clients stay in those homes. . . . And they can mitigate their damages through – through that way.

The district court asked the County whether its "defense [was] based on the availability of the[] offsite homes," to which the County responded, "[c]orrect." After a further colloquy with counsel, the district court indicated it did not think a

5

mitigation instruction was appropriate.  The next day, however, the district court reconsidered and decided to give a mitigation instruction.

During closing arguments, the County did not discuss mitigation as an affirmative defense.[2]  Instead, the County mentioned mitigation only in passing when it argued it was not liable for intentional discrimination.  Specifically, counsel for the County argued:

> [W]e've allowed [Narconon] to mitigate their damages.  To the extent that they can't have everybody on the same property, we're the ones who have permitted them to lease houses and use houses offsite so that they could continue to use this facility to get the counseling services that they say they need.

Following closing arguments, the district court instructed the jury in pertinent part that:

> Damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.  Thus, while a plaintiff seeking to recover damages must ordinarily prove the fact of injury with a reasonable certainty, proof of the amount of damages may be based on a reasonable estimate.
>
> You're also instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to mitigate those damages, that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.
>
> So if you find from a preponderance of the evidence that a plaintiff or the plaintiffs within the limitations of any disabilities sustained failed

---

[2] The County acknowledged during oral argument before this Court that it did not make any argument during its closing statements regarding mitigation of damages as an affirmative defense.

to seek out or take advantage of a business opportunity that was reasonably available under all of the circumstances shown by the evidence, then you should reduce the amount of the plaintiffs' damages by the amount that could have been reasonably realized if the plaintiff had taken advantage of such opportunity.

The jury found the County liable under the FHA for intentionally discriminating against Narconon and awarded Narconon $74,490 in damages. After the entry of judgment, Narconon filed the instant appeal.[3]

## II. STANDARD OF REVIEW

"We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the party who objects to them." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 585 (11th Cir. 2013) (brackets and internal quotation marks omitted). Although our review is *de novo*, the standard is deferential, and we will reverse "only where we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* (internal quotation marks omitted).

## III. DISCUSSION

Narconon argues the district court erred by instructing the jury that a plaintiff has a duty to mitigate its damages under the FHA. According to Narconon, requiring plaintiffs to obtain housing anywhere in a community in order to mitigate their damages would frustrate the central purpose of the FHA, which is

---

[3] The jury found that the County was not liable to Toucan Partners, and Toucan Partners is not a party to this appeal.

to afford individuals with handicaps the right to live in the dwellings of their choice. Narconon contends a mitigation instruction in this case was particularly unjustified because the County's theory of mitigation was that Narconon could have used offsite locations to house clients, but it would not have been reasonable for it to change the nature of its program from an inpatient residential treatment facility to an outpatient program.

The Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, "broadly prohibits discrimination in housing throughout the Nation." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93, 99 S. Ct. 1601, 1605 (1979); *see also* 42 U.S.C. § 3604. In 1988, Congress amended the FHA to prohibit discrimination in housing against individuals with handicaps. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 (11th Cir. 2008); *see also* Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619.[4] Accordingly, § 3604 makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap" of the buyer or renter, a

---

[4] The parties do not dispute that Narconon's Spring Hill facility is a covered dwelling within the meaning of the FHA or that those recovering from drug addiction are protected under the statute. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156 (9th Cir. 2013) ("It is well established that persons recovering from drug and/or alcohol addiction are disabled under the FHA and therefore protected from housing discrimination."); H.R. Rep. No. 100-711, at 22 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2183 ("The Committee does not intend to exclude individuals who have recovered from an addi[c]tion or are participating in a treatment program or a self-help group such as Narcotics Anonymous. . . . Depriving such individuals of housing, or evicting them, would constitute irrational discrimination that may seriously jeopardize their continued recovery.").

person residing or intending to reside in the dwelling, or any person associated with the buyer or renter.  42 U.S.C. § 3604(f)(1).  It is also illegal to discriminate against such persons "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling."  *Id.* § 3604(f)(2).

For the purposes of this appeal, the County's liability for intentionally discriminating against Narconon within the meaning of the FHA has been established by the jury's verdict.  The question we must resolve is whether the district court erred by instructing the jury that a plaintiff has a duty to mitigate its damages when it has suffered intentional discrimination under the FHA.  On this record, we conclude the district court erred by giving such an instruction for two reasons.

First, the district court erred because no evidence was presented at trial to support a mitigation instruction.  A jury instruction is warranted only if there is a factual basis for it, *see Christopher v. Cutter Labs.*, 53 F.3d 1184, 1194 (11th Cir. 1995), and the jury instructions must not have any "tendency to confuse or to mislead the jury with respect to the applicable principles of law," *SEC v. Yun*, 327 F.3d 1263, 1281 n.39 (11th Cir. 2003) (internal quotation marks omitted).  "If the instructions do not accurately reflect the law, and the instructions as a whole do not correctly instruct the jury so that we are left with a substantial and ineradicable

9

doubt as to whether the jury was properly guided in its deliberations, we will reverse and order a new trial." *Yun*, 327 F.3d at 1281 n.39 (internal quotation marks omitted).

The County points only to Strickling's testimony that Narconon used two offsite houses to hold overflow clients as the factual basis for its requested instruction, but that testimony did not support a mitigation instruction. Strickling testified that Narconon rented two houses in the community and that one of the offsite residences could hold eight people while the other residence could hold six people. No evidence was adduced (from Strickling or any other witness) regarding the revenue generated from clients' temporary stays in the offsite housing, the availability of additional offsite housing beyond the two residences Narconon already rented, or the feasibility of maintaining offsite housing in addition to the onsite facilities. In addition, as it conceded at oral argument before this Court, the County did not present to the jury any numbers or otherwise attempt to quantify the damages Narconon could have avoided by using offsite housing. Thus, when the district court instructed the jurors that they should reduce the amount of the plaintiff's damages by the amount that could have been reasonably realized if the plaintiff had taken advantage of reasonable opportunities to reduce or minimize its loss, we have no doubt they were confused and misled. After examining the totality of the instructions and having carefully reviewed the record, we are left

10

with a substantial and ineradicable doubt that the jury was properly guided in its deliberations, and we conclude the district court erroneously instructed the jury on a standard not supported by the evidence adduced at trial. *See Christopher*, 53 F.3d at 1195.

Second, even assuming that mitigation might be an available defense under the FHA, the steps the County would have had Narconon take to mitigate its damages were not reasonable.[5]  As the Supreme Court has explained, tort law generally recognizes the doctrine of avoidable consequences "under which victims have a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from" a legal wrong.  *See Pa. State Police v. Suders*, 542 U.S. 129, 146, 124 S. Ct. 2342, 2354 (2004) (internal quotation marks omitted); *see also* Restatement (Second) of Torts § 918 (1979) ("[O]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.").  The doctrine of avoidable consequences, however, requires plaintiffs to do no more than is reasonable under the circumstances to mitigate or avoid further harm flowing from a tortfeasor's actions.

---

[5] Because a mitigation instruction was not warranted on the specific facts of this case, we do not decide whether a plaintiff who suffered intentional discrimination under the FHA must mitigate its damages in every possible factual scenario.

11

In this case, the County's sole theory of mitigation was that Narconon could have procured additional buildings at offsite locations to house its clients. Contrary to the County's arguments, it was not reasonable to expect Narconon to fundamentally alter its treatment and program model from an onsite, residential service to an offsite program with facilities scattered throughout the community. Strickling testified that the onsite facilities provided clients with one-on-one monitoring from staff members 24 hours per day, seven days per week, that the success rate of outpatient programs is not as high as residential programs, and that Narconon's residential program was designed to provide therapeutic benefits by mimicking family life in that clients would work, eat, and enjoy recreational activities together. Forcing Narconon to procure offsite housing, change its treatment model, and set up the attendant transportation and staffing infrastructure to run multiple offsite locations was not a reasonable option. *Cf. Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 825 (9th Cir. 2001) (assuming without deciding that Fair Housing plaintiffs have a duty to mitigate and concluding that purchasing property without the benefit of a loan was not a reasonable mitigation option).

Accordingly, the district court's instructions did not "properly express the law applicable to the case," and we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations. *State Farm*

12

*Fire & Cas. Co.*, 739 F.3d at 585 (internal quotation marks omitted).  On this record, we are convinced the district court's mitigation instruction was not harmless, and we reverse the district court's judgment and remand for a new trial on damages.  *See Yun*, 327 F.3d at 1281 n.39; *Christopher*, 53 F.3d at 1195.[6]  On remand, the district court should not give a mitigation instruction.

## IV.  CONCLUSION

For the foregoing reasons we reverse the district court's judgment and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[6] Because we conclude a new trial is necessary on the damages issue due to the improper mitigation jury instruction, we do not address Narconon's argument that the district court erred by allowing the County to ask Morgenstern about the hypothetical effect of the issuance of a permit sometime in the future.