**Nicholas HUCKE, Plaintiff,**

v.

**KUBRA DATA TRANSFER LTD., CORP., Defendant.**

**CASE NO. 2:15–CV–14232– ROSENBERG/LYNCH**

United States District Court, S.D. Florida.

Signed 11/09/2015

FOR THE PLAINTIFF: Bret Leon
Lusskin, Jr., Bret Lusskin, P.A., 20803

Biscayne Blvd., Ste 302, Aventura, FL 33180, Scott David Owens, Scott D. Owens, P.A., 3800 S. Ocean Drive, Suite 235, Hollywood, FL 33019.

FOR THE DEFENDANTS: Cory William Eichhorn, Holland & Knight LLP, 701 Brickell Avenue, Suite 3300, Miami, FL 33131, Jonathan R. Donnellan, Hearst Corporation Office of General Counsel, 300 W. 57th Street, 40th Floor, New York, NY 10019, Kristina E. Findikyan, Hearst Corporation Office of General Counsel, 300 W. 57th Street, 40th Floor, New York, NY 10019.

### ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

ROBIN L. ROSENBERG, UNITED STATES DISTRICT JUDGE

**THIS MATTER** is before the Court upon Magistrate Judge Lynch's Report and Recommendation ("R & R") [DE 31], Plaintiff's objection thereto [DE 32], Defendant's response [DE 33], and Plaintiff's notice of supplemental authority [DE 35]. The R & R recommends granting Defendant's Motion to Dismiss [DE 11] with prejudice. For the reasons set forth below, the Court **ADOPTS** Magistrate Judge Lynch's R & R, finding his recommendations to be well reasoned and correct. However, the Court finds it appropriate to further explain its reasoning with regard to the issues raised in Plaintiff's objection, both to address the effect of the Eleventh Circuit's recent decision in *Dana's Railroad Supply v. Attorney General, Florida*, 807 F.3d 1235 (11th Cir.2015), and because Magistrate Judge Lynch's R & R disagrees with a recent decision from this court, *Pincus v. Speedpay*, No. 15–80164–CIV–MARRA, 2015 WL 5820808 (S.D.Fla. Oct. 6, 2015).

### I. BACKGROUND

Plaintiff has brought six claims against Defendant for unjust enrichment, money

had and received, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See* DE 1. Counts I through III are premised on Defendant's alleged violations of Fla. Stat. § 501.0117 (the "Surcharge Statute"), and Counts IV through VI are premised on Defendant's alleged violations of Fla. Stat. § 560.204 (the "Money Transmitter Statute"). Plaintiff alleges that he paid his residential electricity bill to Duke Energy Florida by using Defendant's "EZ–Pay" service, and that Defendant imposed a $2.40 surcharge on Plaintiff for the privilege of making the payment with a credit card. *See* DE 1 at ¶¶ 21–24. Plaintiff alleges that this surcharge violated the Surcharge Statute, and that Defendant was not properly licensed to conduct this transaction, as required under the Money Transmitter Statute. *See* DE 1 at ¶¶ 19–20, 40–44. Plaintiff seeks to bring this action on behalf of himself and a class of similarly situated persons. *See* DE 1 at ¶¶ 32–39.

Defendant moved to dismiss the complaint for failure to state a claim, arguing: (1) Plaintiff could not bring common law claims premised on these statutory violations because neither statute provides for a private right of action; and (2) Plaintiff could not bring FDUTPA claims premised on these statutory violations because (a) neither statute expressly states that it may serve as a FDUTPA predicate and (b) the statutes do not proscribe deceptive or unfair practices. *See* DE 11. Regarding the common law claims, Plaintiff responded that they could be brought under Florida case law providing that, where the law requires a party to have a license to conduct business, contracts by unlicensed persons to perform those services are illegal and void. *See* DE 24 at 11–12 (citing *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 320 (S.D.Fla.2001) and *Vista Designs, Inc. v. Silverman*, 774 So.2d 884 (Fla.Dist. Ct.App.2001)). Regarding the FDUTPA claims, Plaintiff argued the Surcharge and

Money Transmitter Statutes are consumer protection statutes, and that courts have held that FDUTPA should be broadly applied. *See* DE 24 at 22–23.

The Court referred the Motion to Dismiss to Magistrate Judge Lynch for disposition. *See* DE 18. Magistrate Judge Lynch issued an R & R recommending that Plaintiff's claims be dismissed with prejudice. *See* DE 31. Plaintiff has objected to that recommendation. *See* DE 32.

## II. LEGAL STANDARD

In considering a motion to dismiss, the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir.2012). To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Where a magistrate judge has submitted an R & R on a dispositive matter, and a party has filed written objections to the R & R, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R.Civ.P. 72(b)(3). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. ANALYSIS

### A. *Claims Based on the Surcharge Statute*

After Magistrate Judge Lynch issued his R & R, the Eleventh Circuit issued its opinion in *Dana's Railroad Supply*, which finds that the Surcharge Statute is an unconstitutional abridgment of free speech. 807 F.3d at 1238–40. Plaintiff filed a notice of supplemental authority alerting the Court to this case, and he appears to concede that his claims based on the Surcharge Statute should be dismissed. *See* DE 35 n.1. Given the Eleventh Circuit's finding that the Surcharge Statute violates the United States Constitution, the Court agrees and Counts I–III of the Complaint are **DISMISSED** with prejudice.

This Court thus finds it unnecessary to address Plaintiff's objections to the R & R as to Counts I–III. However, the Court will address Plaintiff's objections as to Counts IV–VI, which are based on the Money Transmitter Statute, because Plaintiff asserts that those claims remain viable. *See* DE 35 n.1.

### B. *Claims Based on the Money Transmitter Statute*

#### 1. *Common Law Claims*

Plaintiff argues he can bring common law claims for restitution and money had and received based on Florida case law stating that, where the law requires licenses to conduct business, contracts by the unlicensed to perform licensed services are illegal and void. *See* DE 24 at 11–12; DE 32 at 5–6. In the R & R, Magistrate Judge Lynch acknowledges this Florida doctrine, but finds that "[t]he law does not appear to convey the benefit of this doctrine in all instances of statutory or regulatory non-compliance." DE 31 at 8. Rather, he concludes, the case law suggests

> that something more than just the violation of a statute ... is needed. The case law suggests that there must be some indication that the regulatory violation also renders the underlying transaction void or otherwise creates grounds for private restitution.... That is,

some indication in the subject regulatory statute that opens the door to pursuing either restitution or declaratory judgment. *Id.* at 9–11. Magistrate Judge Lynch concedes that this is not explicitly stated in the relevant case law, but finds it to be implicitly so. *Id.* at 11. He concludes:

> [T]here is no per se bar that precludes a plaintiff from basing an unjust enrichment cause of action (or its equivalent) on a violation of a statute. Nor, conversely, will a statutory violation always support an unjust enrichment cause of action. This Court gleans from the ... case law that the answer lies somewhere in the middle. Whether a statute's violation can be redressed through an unjust enrichment cause of action depends on the statute's wording. The statute must do more than require regulatory compliance. The statute must take the added step, either expressly or impliedly, to confer some benefit to private parties that can be redressed through restitution. This may include deeming a contract or a bill void and unenforceable. Or, there must be some strong public policy at issue that warrants the same relief.

*Id.* at 13–14. Magistrate Judge Lynch finds that the Money Transmitter Statute does not contain such language or implicate such public policy concerns, and accordingly concludes that the Plaintiff cannot bring equitable common law claims based on violations of that statute. *Id.* at 14–16.

Plaintiff objects to Magistrate Judge Lynch's conclusion that there must be "something more," in terms of statutory language or public policy, to allow a plaintiff to bring an equitable common law claim premised on a statutory violation. *See* DE 32 at 3–4. Plaintiff relies on *Pincus v. Speedpay*, No. 15–80164–CIV–MAR-RA, 2015 WL 5820808 (S.D.Fla. Oct. 6, 2015), which considered the same case law and materially identical claims, but reached the opposite conclusion. This Court respectfully disagrees with *Pincus* and adopts the analysis set forth in Magistrate Judge Lynch's R & R.

In allowing the plaintiffs to bring common law claims based on violations of the Surcharge Statute and Money Transmitter Statute, *Pincus* relied on *State Farm Fire and Casualty Co. v. Silver Star Health and Rehab,* 739 F.3d 579 (11th Cir.2013) and declined to rely on *Buell v. Direct General Insurance Agency, Inc.,* 267 Fed. Appx. 907 (11th Cir.2008). However, this Court agrees with Magistrate Judge Lynch that, although those cases reached opposing results, they are not inconsistent. Both cases actually "show[ ] the importance of the underlying statute's language." DE 31 at 12.

In *Silver Star,* the Eleventh Circuit allowed an insurance company to bring an unjust enrichment claim for money it paid to a medical clinic that was not properly licensed. 739 F.3d at 582. Although the relevant statute, the Florida Health Care Clinic Act (Chapter 400) did "not expressly refer to a judicial remedy, it provide[d] that '[a]ll charges or reimbursement claims made by or on behalf of a clinic that ... is not so licensed ... are unlawful charges, and therefore are noncompensable and unenforceable.'" *Id.* at 583 (quoting Fla. Stat. § 400.9935(3)). In *Buell,* the Eleventh Circuit affirmed the dismissal of plaintiff's claims for money had and received and recission based on violations of the Florida Unfair Insurance Trade Practices Act ("FUITPA"): specifically, allegations of "sliding" and that the insurance agents were not properly licensed. 267 Fed.Appx. at 908–09. Finding that "the Florida legislature created a private cause of action for certain FUITPA violations but not others," and not for the violations

alleged by plaintiff, the Eleventh Circuit declined to "use the common law of contracts [sic] to circumvent this deliberate remedial limitation." *Id.* at 909. *Buell* specifically rejected plaintiffs' argument "that the availability of a statutory remedy should be irrelevant, as Florida common law makes rescission or restitution available to protect an innocent party from the consequences of a contract whose subject matter is illegal," finding this argument ran afoul of the Florida Supreme Court's holding in *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985 (Fla.1994). *Buell,* 267 Fed. Appx. at 909–10.

The *Pincus* decision finds *Buell* unpersuasive on the basis that *Buell* misinterpreted the Florida Supreme Court's decision in *Murthy* :

> The *Buell* Court, however, overlooked the fact that while the Florida Supreme Court in *Murthy* ruled that the statute in question did not create a cause of action, it also stated that "[w]e agree that an owner may recover from a negligent qualifying agent, but only under a common law theory of negligence." *Murthy,* 644 So.2d at 986–87. Hence, *Murthy* did not preclude other available civil causes of action that might already exist. *Murthy* simply stated that the statute did not create the remedy.

*Pincus,* 2015 WL 5820808, at *3. This Court respectfully disagrees, and agrees with the *Buell* court's finding that allowing broad enforcement of statutes via the common law would run afoul of the approach taken by the Florida Supreme Court in *Murthy.*

In *Murthy,* homeowners alleging negligent construction of home improvements attempted to bring claims for negligent performance of a contract, discharge of a fraudulent lien, and violation of Florida's minimum building codes against the qualifying agent of the corporation that had acted as general contractor. 644 So.2d at 984–85. The Florida Supreme Court agreed that Chapter 489, which required a corporation acting as general contractor to have a qualifying agent, imposed a duty on the qualifying agent "to supervise a corporation's construction projects, but [found] that failure to meet that duty does not give rise to a private cause of action against a corporation's qualifying agent." *Id.* However, the court concluded that "an owner may recover from a negligent qualifying agent, but only under a common law theory of negligence or through the administrative remedies available pursuant to Chapter 489." *Id.* at 986–87.

Thus, at best, *Murthy* appeared to allow the statute in question to establish the existence of a duty for purposes of a common law negligence claim, notwithstanding the absence of a statutory cause of action. This is not the same as concluding that a statutory violation gives rise to a claim of unjust enrichment or money had and received.[1] The plaintiffs in *Murthy* "alleged both property damage and personal injury," damages that could support a claim for negligence regardless of the statutory violation. *Id.* at 985. The fact that the defendant's behavior may have violated a statute would simply make it easier for the plaintiffs to prove defendant's behavior was negligent. *See generally deJesus v. Seaboard Coast Line R. Co.,* 281 So.2d 198, 200–01 (Fla.1973) (discussing how a statutory violation may establish negligence per se or be prima facie evidence of negligence). Here, in contrast, Plaintiff has not

---

1. The Court agrees with Magistrate Judge Lynch that unjust enrichment and money had and received are different names for the same theory of restitution-based equitable relief. *See Kelly v. Palmer, Reifler & Assocs., P.A.,* 681 F.Supp.2d 1356, 1384 (S.D.Fla.2010) (noting that, in Florida, the elements of restitution, unjust enrichment, and money had a received are the same).

alleged any injury that would exist independent of the alleged statutory violations: he simply alleges that, because the Defendant violated the Money Transmitter Statute, it would be inequitable for Defendant to keep Plaintiff's money. *See* DE 1 at ¶¶ 53–61. In other words, Plaintiff argues that the parties' transaction is void because plaintiff did not receive the benefit of his bargain, i.e., the consideration received by the plaintiff was inadequate as a matter of law. *See generally Bohlke v. Shearer's Foods, LLC,* No. 9:14–CV–80727, 2015 WL 249418 (S.D.Fla. Jan. 20, 2015) (when defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails).

This Court agrees with Defendant that *Murthy* stands for the proposition that, "where a defendant has injured a plaintiff in a way that gives rise to a common law claim (in *Murthy,* performed construction work in a negligent fashion), the mere fact that the defendant might also have violated a statute without any private right of action does not preclude a plaintiff from asserting its existing common law claims." DE 33 at 9. However, "[n]othing in *Murthy* stands for the proposition that a plaintiff may assert a common law claim" where "Plaintiff has not alleged any injury that would exist *independent* of the purported statutory violations." *Id.* Buell considered the latter situation, which *Murthy* simply did not address.

Furthermore, the approach taken in *Buell*—i.e., refusing to allow plaintiffs to evade legislative intent through use of a restitution-based cause of action—is consistent with *Murthy*'s holding that "legislative intent" should be "the primary factor" in deciding whether a statutory cause of action exists. 644 So.2d at 985. Because "[j]udicially inventing a right to sue—based on a statute that provides no right to sue—arrogates to the judiciary a power of the legislature" and "ignores not

only the formal separation of powers but also the legislature's superior legislative competence," courts should be cautious when allowing plaintiffs to bring an equitable common law claim premised on violation of a statute that provides no explicit statutory cause of action. *Lemy v. Direct General Finance Co.,* 884 F.Supp.2d 1236, 1238 (M.D.Fla.2012) (denying reconsideration of dismissal of common claims based on violation of insurance statute), *affirmed at* 559 Fed.Appx. 796 (11th Cir.2014); *see also QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n, Inc.,* 94 So.3d 541, 552–53 (Fla. 2012) (declining to void hurricane deductible in insurance policy, based on insurer's failure to comply with a statutory notice provision, because statute did not provide for that remedy and "courts cannot provide a remedy when the Legislature has failed to do so"). Where, as here, the plaintiff alleges no injury apart from violation of the statute, the Court agrees with Magistrate Judge Lynch's conclusion that there must be "something more," in terms of statutory language or public policy, to allow the plaintiff to bring a restitution-based cause of action based solely on violation of the statute.

The Florida case law cited by Plaintiffs, *see* DE 32 at 5–6, does not compel a different result. In *Cooper v. Paris,* 413 So.2d 772 (Fla.Dist.Ct.App.1982), which held an investor could seek restitution for money paid to an unlicensed real estate broker, the Florida court explicitly noted that the relevant statute "subjects the unlicensed real estate agent not only *to forfeiture of his right to compensation* but also to criminal liability. § 475.42, Fla. Stat." *Id.* at 774 (emphasis added). Thus, there was language in the statute indicating the legislature's intent to void such a transaction.

In *Vista Designs, Inc. v. Silverman,* 774 So.2d 884 (Fla.Dist.Ct.App.2001), the Florida Fourth District Court of Appeal ruled

that an unlicensed attorney was required to disgorge the proceeds he earned under a contract of representation, even though the court "acknowledge[d] that unlike real estate brokers, there are no specific regulatory measures equivalent to Chapter 475 which require disgorgement of fees under the facts in this situation." *Id.* at 887. However, the court found that "regulatory measures make it a criminal offense to practice law without a license, *see* section 454.23, Fla. Stat., and the admission of attorneys to practice law is considered a judicial function, *see* section 454.021, Fla. Stat." *Id.* Here, as discussed further below, the Money Transmitter Statute does not implicate a traditional judicial function and does not invoke the same public policy concerns.

The Money Transmitter Statute provides: "[A] person may not engage in, or in any manner advertise that they engage in, the selling or issuing of payment instruments or in the activity of a money transmitter, for compensation, without first obtaining a license under this part." Fla. Stat. § 560.204(1).[2] Violations of the Money Transmitter Statute are enforced by the Office of Financial Regulation of the Financial Services Commission. *See generally* Fla. Stat. §§ 560.105, 560.113, 560.114; *see also* Fla. Stat. § 560.103(7), (25) (definitions). The statute does not indicate that a violation of the licensing requirement voids a transaction engaged in by the unlicensed Money Transmitter.[3] The statute does refer to possible restitution, but only in the context of an administrative enforcement action:

In addition to, or in lieu of, any other remedies provided under this chapter,

*the office* may apply to the court hearing the matter for an order directing the defendant to make restitution of those sums shown by the office to have been obtained in violation of this chapter. Such restitution shall, at the option of the court, be payable to the administrator or receiver appointed under this section or directly to the persons whose assets were obtained in violation of this chapter.

Fla. Stat. § 560.113(3) (emphasis added); *see also* Fla. Stat. § 560.116 ("Any person having reason to believe that a provision of this chapter is being violated, has been violated, or is about to be violated, may file a complaint *with the office* setting forth the details of the alleged violation.") (emphasis added). In light of the Florida Legislature's indication that this statute should be enforced by the Office of Financial Regulation of the Financial Services Commission, the Court agrees with Magistrate Judge Lynch that violations of the Money Transmitter Statute cannot serve as the basis for a common law claim of unjust enrichment or money had and received, as this would essentially allow an end-run around the Legislature's decision not to provide a statutory cause of action. Accordingly, Counts IV and V are **DISMISSED** with prejudice.

**2. *FDUTPA Claim***

As with Plaintiff's common law claims, Magistrate Judge Lynch recommends dismissal with prejudice of Count VI, Plaintiff's FDUTPA claim based on violation of the Money Transmitter Statute. *See* DE 31 at 16–21. Magistrate Judge Lynch finds that violations of the

---

**2.** The Court is assuming *arguendo,* as did Magistrate Judge Lynch, that Defendant qualifies as a "money transmitter" that is required to be licensed under the statute. *See* DE 31 at 14.

**3.** The Court rejects Plaintiffs' argument that the statute's reference to "for compensation" is equivalent to the statutory language at issue in *Silver Star,* which provided that charges in violation of the statute were "noncompensable." *See* DE 32 at 9.

Money Transmitter Statute cannot serve as a predicate for FDUTPA claims because: (1) the statute does not expressly state it may serve such a purpose; and (2) it does not accomplish the same goal as the FDUTPA because it does not prescribe a deceptive or unfair practice or act. *See id.* Magistrate Judge Lynch "acknowledges that the FDUTPA is to be applied broadly," but finds "there still is a limit to how far the FDUTPA can reach," and Plaintiff's arguments "show nothing more than a *general, indirect* link between the subject statute[ ] and consumer protection goals." *Id.* at 20 (emphasis added). Magistrate Judge Lynch notes that "the only 'deception' was to cause the Plaintiff to pay a fee that otherwise is illegal.... The Plaintiff had a range of payment options to choose from with full disclosure of the fee for the online credit card payment option." *Id.* at 20–21.

Plaintiff again relies on *Pincus*, which reached the opposite conclusion. *See* DE 32 at 10; *Pincus*, 2015 WL 5820808 at *5. The discussion of this issue in *Pincus* is as follows: "With respect to the FDUTPA claim, the Court rejects Defendant's contention that Plaintiff has not alleged the necessary elements. Courts have regarded FDUTPA as 'extremely broad' and the statute is designed to protect the consuming public from those who would engage in deceptive or unfair trade practices." *Id.* at *5 (citing *Day v. Le–Jo Enters., Inc.*, 521 So.2d 175, 178 (Fla.Dist.Ct.App.1988)).

■■■ "To establish a claim under the FDUTPA, [a plaintiff] must show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F.Supp.3d 1343, 1354 (S.D.Fla.2015). "A deceptive act or practice is 'one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, un-

scrupulous or substantially injurious to consumers.'" *Id.* (quoting *Washington v. LaSalle Bank Nat'l Ass'n*, 817 F.Supp.2d 1345, 1350 (S.D.Fla.2011). A violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate for a FDUTPA claim. Fla. Stat. § 501.203(3)(c). Statutes may serve as predicates for a FDUTPA claim under section 501.203(3)(c) in one of two ways: "First, the text of a statute may expressly state that it is to serve as a FDUTPA predicate .... Second, a court may find that a statute proscribes unfair and deceptive trade practices and therefore operates as an implied FDUTPA predicate." *Parr v. Maesbury Homes, Inc.*, No. 609CV–1268–ORL–19GJK, 2009 WL 5171770, at *7 (M.D.Fla. Dec. 22, 2009).

Plaintiff has produced no authority, other than *Pincus*, stating that the Money Transmitter Statute may serve as a FDUTPA predicate. *See* DE 32 at 10–13; *see also* DE 31 at 19. The Court agrees with Magistrate Judge Lynch's conclusion that the Money Transmitter Statute does not proscribe unfair and deceptive trade practices, particularly considering the facts alleged in support of the violations at issue here. *See* DE 31 at 20–21.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. Magistrate Judge Lynch's Report and Recommendation [DE 31] is **RATIFIED, APPROVED, AND ADOPTED** in its entirety;

2. Defendant's Motion to Dismiss [DE 11] is **GRANTED**;

3. The Complaint [DE 1] is **DISMISSED WITH PREJUDICE**;

4. The Clerk of the Court is directed to **CLOSE THIS CASE**; and

5. All pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this *9th* day of November, 2015.