[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13947
_____

D.C. Docket No. 8:11-cv-00804-EAK-EAJ


ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY,
ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,
ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY,
f.k.a. Deerbrook Insurance Company,
successor by merger to Northbrook Indemnity Company,

Plaintiffs-Counter Defendants-
Appellees,

versus

SARA C. VIZCAY, M.D.,

Defendant-Appellant,


BEST CARE MEDICAL CENTER, INC.,
CALEB HEALTH CARE, INC.
FLORIDA REHABILITATION PRACTICE, INC.,
f.k.a. Dana Medical Center, Inc.,
GLOBAL DIAGNOSTIC CENTER, INC.,
PERSONAL MEDICAL CENTER, INC.,

P.V.C. MEDICAL CENTER, INC.,
REGIONAL ENTERPRISES FOR HEALTH CORPORATION,

Defendants-Counter Claimants-
Appellants.

———————————————

Appeal from the United States District Court
for the Middle District of Florida
———————————————

(June 23, 2016)

Before ED CARNES, Chief Judge, JILL PRYOR, and RIPPLE,[*] Circuit Judges.

ED CARNES, Chief Judge:

Allstate Insurance Company and some of its affiliates (all of which we'll refer to as "Allstate") filed this lawsuit against multiple defendants, asserting claims for fraud, negligent misrepresentation, and unjust enrichment. The three defendants involved in this appeal — Best Care Medical Center, Inc., P.V.C. Medical Center, Inc., and Florida Rehabilitation Practice, Inc. — are medical clinics that appointed Dr. Sara Vizcay as their medical director. Allstate's central allegation is that Dr. Vizcay failed to systematically review billings as required by Florida's Health Care Clinic Act (the "Clinic Act"), Fla. Stat. §§ 400.990 et seq. (2008),[1] which caused the clinics to submit unlawful or fraudulent insurance

---

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

[1] The parties cite to the 2008 version of the Clinic Act. Following their lead, all citations in this opinion to the Clinic Act are to the 2008 version unless otherwise noted.

2

claims to Allstate. A jury found the clinics liable on various grounds and awarded damages to Allstate. This is the clinics' appeal.

## I.

Florida's Clinic Act requires clinics operating in and licensed by the State to "appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for [certain enumerated] activities on behalf of the clinic." Fla. Stat. § 400.9935(1); see also id. §§ 400.9905(4), 400.991. One of those activities is "[c]onduct[ing] systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful." Id. § 400.9935(1)(g). A clinic's failure to comply with the Clinic Act's licensing requirements carries significant consequences. In relevant part, the Act provides:

> All charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed, or that is otherwise operating in violation of this part, are unlawful charges, and therefore are noncompensable and unenforceable.

Id. § 400.9935(3) (emphasis added). In other words, any claim made by a licensed clinic to an insurance company or other entity is "noncompensable and unenforceable" if the clinic is "operating in violation" of the Clinic Act's licensing requirements.

The three clinics involved in this appeal operated in and were licensed by the State of Florida. As a result, they were required to and did appoint a medical

3

director to ensure their compliance with the Clinic Act's licensing requirements. All three clinics appointed the same medical director, Dr. Vizcay, who also purported to own and operate four other clinics.[2]  In her capacity as a medical director, Dr. Vizcay was responsible for, among other things, systematically reviewing clinic billings to ensure that they were not fraudulent or unlawful. Despite that obligation, she apparently reviewed a total of only five files per month from each clinic.  The record does not say exactly how many files each clinic had, but at oral argument the attorney for the clinics conceded that it was over 100.

Over the course of Dr. Vizcay's tenure, the clinics at which she worked submitted numerous insurance claims to Allstate for services that they claimed to have rendered to Allstate's insureds, and Allstate paid hundreds of thousands of dollars' worth of benefits to the clinics.  The clinics also billed Allstate for additional amounts that it has not yet paid.

On September 18, 2008, an Allstate investigator visited one of the clinics that Dr. Vizcay purported to own.  Dr. Vizcay's statements during that visit led the investigator to believe that she was not adequately reviewing clinic billings.  As a result, Allstate began a more expansive investigation.  The investigation revealed that many of the claims that the clinics had submitted to Allstate were false,

---

[2] We say that Dr. Vizcay "purported" to own four other clinics because Allstate alleged in its complaint that Dr. Vizcay misrepresented her ownership of those clinics.  Because those allegations are not relevant to this appeal, we do not address them.

4

inaccurate, or misleading, and that the clinics had, in many cases, submitted claims for services that were never rendered at all or for amounts greater than the actual value of the services that were rendered.

On April 12, 2011, Allstate filed a lawsuit against (1) Dr. Vizcay, (2) the four clinics she purported to own, and (3) the three clinics at which she served as medical director (the ones involved in this appeal). Allstate contended that because Dr. Vizcay had not systematically reviewed clinic billings, the clinics at which she served as medical director had been operating in violation of the Clinic Act's licensing requirements and that, as a result, any claims submitted by those clinics during that time were noncompensable and unenforceable under the Act. Allstate sought to recover the money it paid to those clinics under theories of negligent misrepresentation, fraud, and unjust enrichment, and it also sought declaratory relief stating that it did not owe any amounts on the clinics' outstanding bills.

The case proceeded to trial. The jury found that Dr. Vizcay had failed to substantially comply with her medical director duties by failing to systematically review billings and that, as a result, the clinics at which she served as medical director were liable for negligent misrepresentation, fraud, and unjust enrichment. Although the jury awarded damages on all three claims, the district court entered a final judgment that reduced the jury's awards of damages for negligent

5

misrepresentation and fraud to zero.  The awards of damages for unjust enrichment are all that remain.[3]  The court also granted declaratory relief stating that Allstate had no legal obligation to pay outstanding charges that the clinics made while operating in violation of the Clinic Act.  The clinics at which the Dr. Vizcay served as medical director appealed.[4]

## II.

The clinics challenge the jury's verdict, and the district court's denial of their dispositive motions, on numerous grounds.  Although they make some scattershot arguments in their initial brief to this Court, the issues they properly raise and argue are:  (1) whether, under Florida law, there is judicial remedy for a licensed clinic's violation of the Clinic Act; (2) if a judicial remedy is available, whether a licensed clinic can be held responsible for its medical director's failure to comply with the duties enumerated in the Clinic Act; (3) if a clinic can be held liable for its medical director's failure to comply with the duties enumerated in the Clinic Act, whether the evidence is sufficient to support the jury's finding that

---

[3] With respect to the three clinics involved in this appeal, the awards for unjust enrichment were in the amounts of $158,335.83 against Best Care Medical Center, Inc., $375,051.18 against Florida Rehabilitation Practice, Inc., and $129,855.98 against P.V.C. Medical Center, Inc.  The damage awards were equal to the amounts Allstate had paid to each clinic.

[4] Initially, all of the defendants appealed.  The three clinics at which Dr. Vizcay served as medical director filed one notice of appeal.  Dr. Vizcay and the four clinics she purported to own filed a separate notice of appeal, but their appeal was later dismissed for failure to prosecute. The three clinics at which Dr. Vizcay served as medical director are the only remaining defendants that are parties to this appeal.

Dr. Vizcay failed to substantially comply with those duties; (4) whether Allstate's fraud claims were barred by Florida's statute of limitations; and (5) whether the district court erred in denying the defendants' motions to bifurcate the trial.[5] We answer yes to the first three of those questions and no to the last two of them.

A.

As a threshold matter, the clinics contend that Florida law does not provide an insurer with a judicial remedy for a clinic's violation of the Clinic Act's licensing requirements and, in any event, recovery under a theory of unjust enrichment would be the wrong remedy. They are wrong on both counts.

In State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013), we held that "[u]nder Florida law [an insurer] [is] entitled to seek a judicial remedy to recover the amounts it paid [to a clinic operating in violation of the Clinic Act] and to obtain a declaratory judgment that it is not required to pay [the clinic] the amount of the outstanding bills." We also held that because claims made by a clinic operating in violation of the Clinic Act are deemed noncompensable and unenforceable under the statute, an insurer can recover its payments made to a violator-clinic on a theory of unjust enrichment. Id. at 583–84; see also Fla. Stat. § 400.9935(3). As we explained:

---

[5] The clinics also contend that Allstate failed to establish certain elements of negligent misrepresentation and unjust enrichment. Because the clinics' arguments about those points turn on the other issues they raise, we do not address them separately.

7

> . . . Florida courts have long recognized a cause of action for unjust enrichment to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity. [The insurer] claimed in this case that [the clinic] was unjustly enriched because it accepted payments from [the insurer] that it was not entitled to under Florida law. If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment.

State Farm, 739 F.3d at 584 (citation and quotation marks omitted).

In this case, Allstate contends that claims made by or on behalf of the clinics are noncompensable and unenforceable because the clinics were operating in violation of the Clinic Act's licensing requirements. Under State Farm, that is a recognized theory for recovering payments made. If Allstate showed that the clinics were in fact operating in violation of the Clinic Act, then it was entitled to recover the amounts it paid to the clinics and to obtain a declaratory judgment that it is not required to pay the clinics for outstanding bills that originated during the violation period. See id.

The clinics attempt to distinguish State Farm on the ground that the clinic in that case was unlicensed, while the clinics here were licensed. That is a distinction without a difference. In both State Farm and this case, the plaintiff insurers sought to recover money they paid to clinics operating in violation of the Clinic Act's licensing requirements. The clinic in State Farm violated the Clinic Act by operating without a license. Id. at 582. The clinics here violated the Act by failing

8

to comply with the medical director duties enumerated in the statute. The Act covers both types of violations by providing that claims made by a clinic to an insurer are noncompensable and unenforceable if the clinic "is required to be licensed . . . but . . . is not so licensed," <u>or</u> if the clinic "<u>is otherwise operating in violation</u>" of the Act's licensing requirements. Fla. Stat. § 400.9935(3) (emphasis added). Given that language, there is no good reason to allow a judicial remedy for one type of violation but not the other.

## B.

The clinics next contend that even if Florida law provides an insurer with a judicial remedy for violations of the Clinic Act, a licensed clinic cannot be held liable for its medical director's failure to carry out the duties enumerated in the statute. The Act provides: "Each clinic shall appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for [certain enumerated] activities on behalf of the clinic." Fla. Stat. § 400.9935(1). The clinics maintain that the "accept legal responsibility" language limits a clinic's liability, rules out a principal-agency relationship between a clinic and its medical director, and "explicitly places the onus of legal responsibility and liability for compliance squarely upon the [m]edical [d]irector." Along a similar vein, the clinics argue that a licensed clinic cannot be held liable for its medical director's

9

fraud or negligent misrepresentation because a medical director's knowledge or representations cannot be attributed to the clinic at which she serves.

The clinics' interpretation of the Clinic Act ignores the inconvenient fact that the statute requires the medical director to accept legal responsibility "on behalf of the clinic." Fla. Stat. § 400.9935(1) (emphasis added). While the Act does not define "on behalf of," we have said in other contexts that the ordinary and plain meaning of those words is "'as the agent of' or 'as representative of.'" Rine v. Imagitas, Inc., 590 F.3d 1215, 1224–25 (11th Cir. 2009); see also Craven v. United States, 215 F.3d 1201, 1207 (11th Cir. 2000) (noting another court's plain-meaning reading of the term "on behalf" as "in the interest of" or "as a representative of"); Great Am. Ins. Cos. v. Souza, 855 So. 2d 187, 189 (Fla. 4th DCA 2003) ("The plain meaning of the phrase 'on behalf of' is 'as the agent of, on the part of.'"). Read in that fashion, the Act requires a licensed clinic to appoint a medical director who will agree to accept legal responsibility for carrying out the duties enumerated in the statute as the agent of the clinic.

The plain meaning of the statutory language shows that the Florida legislature intended to establish, not eschew, a principal-agent relationship between a clinic and its medical director. And it is hornbook law that "a principal may be held liable for the acts of its agent that are within the course and scope of the agency." Roessler v. Novak, 858 So. 2d 1158, 1161 (Fla. 2d DCA 2003). That

10

liability extends to an agent's fraud or negligence.  See Taco Bell of Cal. v. Zappone, 324 So. 2d 121, 123 (Fla. 2d DCA 1975); Jaar v. Univ. of Miami, 474 So. 2d 239, 245 (Fla. 3d DCA 1985).  Nothing in the text or structure of the Act suggests that the Florida legislature intended to depart from that well-established principle of agency law.  Under Florida law, a licensed clinic may be held responsible for its medical director's failure to substantially comply with the medical director duties enumerated in the Act.

## C.

The clinics next contend that even if a clinic can be held liable for its medical director's failure to comply with the Clinic Act, the evidence presented at trial was insufficient to support the jury's finding that Dr. Vizcay failed to substantially comply with the statute's requirements.  We will reverse a jury's verdict "only if the facts and inferences point overwhelmingly in favor of one party such that reasonable people could not arrive at a contrary verdict."  Action Marine, Inc. v. Cont'l Carbon, Inc., 481 F.3d 1302, 1309 (11th Cir. 2007) (quotation marks omitted).

The clinics point out that Dr. Vizcay testified that she randomly selected for review at each clinic at least five billings per month.  Because the Clinic Act does not state how many files a medical director must review, the clinics assert, it's not clear that Dr. Vizcay's review was inadequate.

11

The Clinic Act does not state exactly how thorough a medical director's systematic review must be, but this case does not require us to define the bare minimum of the statute's review requirements. Whatever that minimum is, the jury was presented with enough evidence to find that Dr. Vizcay did not come close to satisfying it. When asked about her review "system" at trial, Dr. Vizcay was unfamiliar with the number of patients being treated at her clinics and admitted that she did not have a methodology for ensuring that the clinics were properly coding medical services. Allstate's medical billing expert testified that the evidence of improper and abusive billing practices was so prevalent that it would have been readily apparent to someone conducting even a cursory review. Based on that evidence, the jury was well within bounds to find that Dr. Vizcay had failed to adequately review billings, systematically or otherwise.

The evidence presented at trial supported the jury's finding that Dr. Vizcay did not substantially comply with the Clinic Act's requirements. As a result, the claims submitted by the clinics to Allstate were noncompensable and unenforceable, and Allstate was entitled to recover the amounts it had paid and to obtain a declaratory judgment that it is not required to pay the clinics the amounts of any outstanding bills. See State Farm, 739 F.3d at 584.

12

D.

The clinics' final contention on the merits is that Allstate's fraud claims are barred by Florida's statute of limitations. Under Florida law, an action for fraud must be brought within four years. Fla. Stat. § 95.11(3)(j). Like many jurisdictions, however, Florida applies the delayed discovery rule, under which "the statute of limitations begins to run when a person has been put on notice of his right to a cause of action." Jones v. Childers, 18 F.3d 899, 906 (11th Cir. 1994). That means that the clock on the statute of limitations for a fraud claim does not start running until "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a).

Allstate argues that the statute of limitations began running on September 18, 2008, when its investigator first visited Dr. Vizcay and began to suspect fraud. If Allstate is right about when the clock started running, the filing of the lawsuit on April 12, 2011, was within the four-year limitations period.

The clinics do not contend that, with the exercise of due diligence, Allstate could have or should have discovered the fraud before September 2008. Nor do they contend that the statute of limitations should have started running earlier for some other reason. Instead, they argue that when Allstate filed its complaint in April 2011, it still had "no reason . . . to suspect fraud on the part of the [clinics]."

13

They assert that "the appropriate date" on which the statute of limitations should have started running was "the date of filing, April 12, 2011." From that they conclude that "Allstate [was] precluded from seeking damages for claims that were paid . . . prior to April 12, 2011 — the date of the filing of the lawsuit."

Even under a charitable reading, the clinics' argument makes no sense. According to their view, the statute of limitations on Allstate's claims should have started running on the same day Allstate filed its complaint. If that were true, Allstate timely filed its complaint within the four-year limitations period. How the clinics infer from their depiction of the facts that Allstate could pursue only the money it paid to the clinics after the filing of its complaint, by which time it was no longer paying the clinics any more money, is beyond understanding.

### E.

Finally, the clinics contend that the district court erred in denying their motions to bifurcate the trial into two trials, one for the clinics at which Dr. Vizcay served as medical director (the appellants here) and another for Dr. Vizcay and the clinics she purported to own. They argue that separate trials were required to avoid prejudice given the complexity of the claims, the number of defendants, and the number of witnesses, all of which created the possibility of confusion among the jurors. "We will not disturb a district court's decision not to order separate trials

14

absent an abuse of discretion."  Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., 956 F.2d 1112, 1127–28 (11th Cir. 1992).

Federal Rule of Civil Procedure 42(b) provides:  "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." In determining whether to order separate trials, the district court should consider:

> whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985) (alterations omitted).

A district court properly exercises its discretion not to bifurcate a trial when a joint trial will "save[ ] the [parties] from wasteful relitigation, avoid[ ] duplication of judicial effort, and . . . not materially prejudice [the parties'] rights." Id. at 1497.  A joint trial is appropriate where "[t]here is clearly substantial overlap in the issues, facts, evidence, and witnesses required" for claims against multiple defendants.  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1301 (11th Cir. 2001); see also Hendrix, 776 F.2d at 1496.  That is true in cases with numerous parties, see Beckford v. Dep't of Corr., 605 F.3d 951, 961 (11th Cir. 2010), and even in

15

complex insurance cases, see T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1534–35 (11th Cir. 1985).

The district court did not abuse its discretion in denying the clinics' motion to bifurcate. Given Dr. Vizcay's involvement with all of the clinics, there was substantial overlap in the issues, facts, evidence, and witnesses. Separate trials would have resulted in wasteful litigation and duplication of judicial efforts. Nothing in the record suggests that this case was so complex, or that the parties and witnesses were so numerous, that jurors could not fairly consider the claims.

**AFFIRMED.**