URSULA UNGARO, UNITED STATES DISTRICT JUDGE
*1248 THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment (the "Motion"). D.E. 137. The Court has reviewed the Motion, the pertinent portions of the record and is otherwise fully advised of the premises. For the reasons discussed below, the Motion is GRANTED.
I. Procedural Background
Plaintiffs are Illinois corporations engaged in the business of offering and issuing automobile insurance policies in Florida to provide personal injury protection ("PIP") and/or medical payments coverage ("MPC") under Florida's Motor Vehicle No-Fault Law. Defendants, Felix Filenger ("Filenger"), Andrew Rubinshteyn ("Rubinshteyn"), Linda D. Varisco ("Varisco"), Olga Spivak ("Spivak") and David Greydinger ("Greydinger"), are chiropractors that provided medical services at-and had ownership over and control over various medical clinics in Florida, as described Infra.
Plaintiffs filed their complaint with this Court on May 10, 2017, asserting that between November 2009 and May 2017, the Defendants, acting in their capacity as owners and employees of the Defendant Clinics, provided medical services to individuals involved in automobile accidents, who were insured under Plaintiffs' PIP or MPC policies, thereby receiving more than $ 1.8 million in payments from Plaintiffs. Id. ¶ 14. Plaintiffs allege claims for: (1) unjust enrichment against all Defendants (Count II): and (2) declaratory judgment against the Defendant Clinics (Count II). D.E. 1. Before Plaintiffs filed their Complaint, Greydinger had been indicted and pleaded guilty to one count of Preparing and Presenting False and Fraudulent Insurance Claims of less than $ 20,000.00. D.E. 1 ¶ 22. After Plaintiffs filed their complaint, Varisco, Filenger, Rubinshteyn, Spivak and Greydinger, were indicted by the United States Government on charges including, racketeering, wire fraud, and presenting false and fraudulent insurance claims. D.E. 1; D.E. 68; D.E. 69; D.E. 75. Accordingly, on November 20, 2017, the Court stayed the proceedings until the criminal prosecutions as participation in discovery could implicate the Defendants' Fifth Amendment rights. D.E. 88. The Court ordered the parties to file a status report every sixty days advising the Court as to the status of the prosecutions. On July 11, 2018, the parties filed their Fourth Joint Status Report, explaining that the pending criminal prosecutions had concluded and the Court reopened the case. D.E. 93. The Court then held a status conference on August 10, 2018, requiring certain Defendants to appear for deposition.
The Court subsequently entered an amended Scheduling Order for Pretrial Conference and Trial, D.E. 103, setting a Motion deadline of November 16, 2018. D.E. 103. On October 23, 2018, the Court entered final default judgment against Defendants: Olga Spivak, D.C., Accumed Wellness and Rehabilitation Center, Inc., and Medwell Wellness and Rehabilitation Center, Inc. D.E. 124. As to the remaining Defendants, Plaintiff moved for final default judgment as to Advance Medical Associates and Hollywood Wellness and Rehabilitation Center, Inc., on November 16, 2018, D.E. 137, and on the same date Plaintiff moved for summary judgment as to Defendants Filenger, Rubinshteyn, Varisco, Greydinger, and Total Rehabilitation & Wellness Center ("Total"). As such, the remaining Defendants were required to respond by November 30, 2018, but as of the date of this Order, no response to either *1249 Motion has been filed with the Court. Defendants Greydinger and Total do not oppose this Motion for Summary Judgment against them. D.E. 136 at 11.
II. Factual Background
The Court cannot grant summary judgment solely by virtue of a party's default. United States v. One Piece of Property, 5800 S.W. 74th Ave., Miami, Florida , 363 F.3d 1099, 1101 (11th Cir. 2004) ("[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion."). However, the Court may take the moving party's statement of material facts as admitted pursuant to Local Rule 56.1(b):
Effect of Failure to Controvert Statement of Undisputed Facts. All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record.
Local Rule 56.1(b). Accordingly, as Plaintiffs' statement of material facts is supported by facts in the record, see D.E. 135, and as Defendants have not responded to the Motion or the statement of material facts, the Court deems Plaintiffs' statement of material facts as admitted. See id. As the facts are uncontroverted the Court does not recite them in full here, but a brief summary of the facts, as taken from Plaintiffs' statement of material facts, D.E. 135, is as follows.
A. The Parties
I. Defendant Clinics
Plaintiffs are Illinois corporations engaged in the business of offering and issuing automobile insurance policies in Florida to provide personal injury protection ("PIP") and/or medical payments coverage ("MPC") under Florida's Motor Vehicle No-Fault Law.
Defendant Advance Medical Associates and Forme Rehab, Inc. ("Advance"), and Defendant Hollywood Wellness and Rehabilitation Center, Inc. ("Hollywood"), were Florida corporations that operated as unlawful health care clinics providing medical services to State Farm Mutual and State Farm Fire Insureds involved in automobile accidents. Defendant Varisco was the sole President and Vice President of both Advance and Hollywood.
Defendant Medwell Wellness and Rehabilitation Center, Inc. ("Medwell") was a Florida corporation that also unlawfully provided medical services to State Farm Mutual and State Farm Fire Insureds involved in automobile accidents. The true owners and operators of Medwell were Filenger and Rubinshteyn.
Defendant Accumed Wellness and Rehabilitation Center, Inc. ("Accumed") was a Florida corporation Accumed that also unlawfully provided medical services to State Farm Mutual and State Farm Fire Insureds involved in automobile accidents. Accumed's true owners were Filenger and Rubinshteyn.
Total Rehabilitation & Wellness Center, P.A. ("Total") was a Florida corporation that also unlawfully providing medical services to State Farm Mutual and State Farm Fire Insureds at the same location as Accumed.
II. Defendant Chiropractors
Defendant Varisco was a licensed Florida chiropractic physician and resident of Broward County, Florida. At times material, Varisco falsely purported to wholly own Advance and Hollywood.
*1250 Defendant Spivak, at all times material, was a licensed Florida chiropractic physician and resident of Broward County, Florida. Spivak falsely purported to wholly own Medwell and Accumed.
Defendant David Greydinger, D.C. ("Greydinger") is a resident of Lee County, Florida. Greydinger's chiropractic license was permanently revoked in September 2014, following a plea of guilty to one count of Preparing and Presenting False and Fraudulent Insurance Claims of less than $ 20,000.00. Greydinger falsely purported to be Total's sole owner.
At times material, Defendants Filenger and Rubinshteyn resided in Miami Dade County, Florida. Filenger and Rubinshteyn maintained an ownership interest, in whole or in part, in all the Defendant clinics. Filenger is a lay person that has never held a medical license of any kind in the State of Florida. Rubinshteyn is licensed in the State of Florida as an occupational therapist.
B. The HCAA and Clinic Ownership
The Florida Health Care Clinic Act ("HCAA") requires that health clinics be licensed under the HCAA unless the clinic is "wholly owned" by a licensed healthcare practitioner. See Fla. Stat. §§ 400.9905(4)(g), 400.991. Thus, in order for Filenger and Rubinshteyn, as unlicensed healthcare practitioners, to have an ownership interest in the Defendant Clinics, the Defendant Clinics had to be licensed pursuant the HCAA, but the Defendant Clinics were not licensed pursuant to the HCAA. Instead, the Defendant Chiropractors concealed Filenger's and Rubinshteyn's ownership interest by representing to the State of Florida that the Defendant Chiropractors "wholly owned" the Defendant Clinics as licensed healthcare practitioners. If a clinic is not licensed under the HCAA and is not exempt under the "wholly owned" exemption, the clinics' services are unlawful and are not compensable under Florida law.
C. The Scheme
The Defendants unlawfully provided medical services to patients insured by Plaintiffs who were involved in automobile accidents and submitted bills for PIP benefits to Plaintiffs, for which payments were made under the mistaken belief that the Defendant clinics were lawfully operating as "wholly owned" clinics. Defendants also obtained payment from Plaintiffs for services that were not lawfully provided because: (a) Defendant clinics were not licensed as required by Florida law; (b) Defendant clinics did not qualify for the "wholly owned" exemption from Florida's mandatory clinic licensure laws because Filenger and/or Rubinshteyn were the true owner(s), in whole or in part, and/or controlled the operations of Defendant clinics; and (c) Defendants participated in a scheme to intentionally circumvent Florida's mandatory clinic licensing laws.
D. Prosecution
On October 26, 2017, Varisco pled guilty to the offense of Conspiracy to Commit Mail Fraud, Wire Fraud, Health Care Fraud, and Making False Statements in Connection with Obtaining Health Care Benefits, in violation of 18 U.S.C. Section 371. In the Stipulated Statements of Fact filed in support of the guilty plea, Varisco admits her role in the fraud scheme as a "nominee" owner of Defendant clinics Advance and Hollywood. Varisco was sentenced on March 5, 2018 to 366 days in prison, plus 3 years of supervised release with special conditions imposed.
On December 18, 2017, Filenger pled guilty to the offense of RICO Conspiracy, in violation of 18 U.S.C., Section 1962. In the Stipulated Statements of Fact filed in support of the guilty plea, Filenger admits, among other things, his true ownership *1251 interest in Defendant chiropractic clinics and his unlawful use of chiropractors claiming to be the sole owners of his chiropractic clinics in order to obtain an exemption from the Florida Agency for Health Care Administration. Filenger was sentenced to 78 months in prison plus 3 years supervised release with special conditions imposed.
On or about December 20, 2017, Rubinshteyn pled guilty to the offense of RICO Conspiracy, in violation of 18 U.S.C. Section 1962. In the Stipulated Statements of Fact filed in support of the guilty plea, Rubinshteyn admits, among other things, his true ownership interest in Defendant chiropractic clinics and his unlawful use of chiropractors claiming to be the sole owners of his chiropractic clinics in order to obtain an exemption from the Florida Agency for Health Care Administration. Rubinshteyn was sentenced to 72 months in prison plus 3 years supervised release with special conditions imposed.
On January 8, 2018, Spivak pled guilty to the offense of Conspiracy to Commit Racketeering, in violation of 18 U.S.C. Section 1962. In the Stipulated Statements of Fact filed in support of the guilty plea, Spivak admits, among other things, her role in the fraud as a "nominee" owner of Medwell. Spivak was sentenced to 30 months in prison plus 2 years supervised release with special conditions imposed.
E. Interrogatories & Fifth Amendment
Defendant Filenger failed to provide answers to Plaintiffs First Set of Interrogatories and failed to provide documents to Plaintiff's First Request for Production and instead, invoked his Fifth Amendment privilege. Among many interrogatories, Filenger failed to answer whether he was "at any time employed or retained by any of the Clinics, his duties, his compensation or any details of his involvement in the Clinics." Moreover, he failed to respond to a question requesting that he explain in detail his role as owner of the Clinics along with identifying his responsibilities, tasks and obligations. Again, he instead asserted a Fifth Amendment privilege.
Defendant Rubinshteyn also failed to provide answers to Plaintiffs First Set of Interrogatories and/or documents to Plaintiff's First Request for Production, other than to invoke his Fifth Amendment privilege. In identical fashion to Filenger, Rubinshteyn failed to answer whether he was "at any time employed or retained by any of the Clinics, his duties, his compensation or any details of his involvement in the Clinics." Moreover, exactly as Filenger, he failed to respond to a question requesting that he explain in detail his "role as owner of the Clinics" along with identifying his responsibilities, duties, tasks and obligations. Again, instead of responding, he asserted his Fifth Amendment privilege.
Defendant Greydinger failed to provide answers to Plaintiffs First Set of Interrogatories and failed to provide any responsive documents to Plaintiff's First Request for Production. Instead, Greydinger invoked his Fifth Amendment privilege. When asked to state the name of every business/corporation/entity, other than Total where he owned and/or held an ownership interest or was employed, Greydinger chose to assert his "Fifth Amendment right to remain silent." Moreover, Defendant Greydinger was deposed on September 4, 2018, and declined to answer all substantive questions by asserting his Fifth Amendment constitutional privilege. Furthermore, Greydinger did not appear with any of the requested documents listed on the Notice of Taking Deposition duces tecum.
Similarly, Defendant Total provided Plaintiffs with Answers to Interrogatories that omit the name of the person answering *1252 Interrogatories on its behalf (without any verification) and stated the same response to each question: "I am invoking my Fifth Amendment rights," and similarly provided a Response to Request for Production stating, "I am invoking my constitutional Fifth Amendment right to remain silent."
Defendant, Varisco, in her Answer to Plaintiffs' Complaint also invoked her Fifth Amendment privilege against self-incrimination in response to most allegations.
III. Legal Standard
Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party." Adickes v. S.H. Kress & Co. , 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; Rojas v. Florida , 285 F.3d 1339, 1341-42 (11th Cir. 2002).
The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial." See Celotex Corp. v. Catrett , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Poole v. Country Club of Columbus, Inc. , 129 F.3d 551, 553 (11th Cir. 1997) ; Barfield v. Brierton , 883 F.2d 923, 933 (11th Cir. 1989).
If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. Envntl. Def. Fund v. Marsh , 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co. , 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. Impossible Elec. Techs., Inc. v. Wackenhut Protective Sys., Inc. , 669 F.2d 1026, 1031 (5th Cir. 1982) ; see also Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").
Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. Adickes , 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. Brunswick Corp. v. Vineberg , 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. Liberty Lobby, Inc. , 477 U.S. at 255, 106 S.Ct. 2505.
*1253 IV. Discussion
A. Plaintiffs' Grounds for Summary Judgment & Remaining Defendants
Plaintiffs' complaint contains two Counts: unjust enrichment against all 10 Defendants (Advance, Hollywood, Medwell, Accumed, Total, Varisco, Spivak, Greydinger, Filenger, Rubinshteyn) and declaratory judgment against Advance, Hollywood, Medwell, Accumed and Total, seeking a declaration that Plaintiffs are not obligated to pay any amounts or charges to Defendant that are outstanding, nor any claims or demands that have been or may be submitted by the Defendant clinics for services unlawfully provided by those clinics. D.E. 1. As noted above, the Court has granted final default judgment against Defendants Spivak, Medwell and Accumed. D.E. 123. Plaintiffs separately seek final default judgment against Advance and Hollywood. D.E. 137.
Plaintiffs assert that they are entitled to summary judgment on both of their claims as to the remaining Defendants: Total, Greydinger, Varisco, Filenger and Rubinshteyn because there is no genuine issue of material fact as to the elements of their claims for unjust enrichment and Declaratory relief. D.E. 136. Defendants Total and Greydinger do not oppose summary judgment against them. Id. at 11, 18. Although Defendants have not responded to the Motion, Plaintiffs note that in response to the allegations in Plaintiffs' complaint and in interrogatories, these Defendants have asserted their Fifth Amendment right against self-incrimination and refused to answer interrogatories. D.E. 136. Accordingly, the Court will first consider Plaintiffs' unjust enrichment claim and their claim for declaratory judgment before turning to the effect of Defendants' invocation of their Fifth Amendment right against self-incrimination.
B. Unjust Enrichment & Declaratory Judgment
To make out a claim for unjust enrichment under Florida law, a plaintiff must show that: (1) he or she conferred a benefit on defendants; (2) the defendants have knowledge of the benefit; (3) defendants voluntarily accepted and retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying the value thereof to the plaintiffs. Golden v. Woodward , 15 So.3d 664, 670 (Fla. Dist. Ct. App. 2009) (quotation omitted). Plaintiffs argue that they are entitled to summary judgment on their unjust enrichment claim because:
(1) Plaintiffs unknowingly conferred benefits on Defendants by making payments to the clinics pursuant to improper claims for benefits for its insureds; (2) Defendants voluntarily accepted and retained those benefits from Plaintiffs despite their knowledge that the services purportedly rendered by them were not "lawfully provided" as required by Florida law; and (3) Defendants' retention of those benefits was wrongful and in violation of Florida law, which, as a result, harmed Plaintiffs.
D.E. 136 at 15. The Court agrees. The undisputed statement of material facts, Plaintiffs' affidavit, and the attached business records indicate that Defendants submitted thousands of dollars of bills to Plaintiffs for unlawfully rendered medical services, Defendants received payments for these services in the amount of $ 1,880,485 despite not being appropriately licensed under the Health Care Clinic Act, and all Defendants except Greydinger were criminally indicted and eventually convicted for, inter alia , attempting to circumvent the HCAA by falsely purporting to "wholly-own" the clinics. See D.E. 135 at 8-10; D.E. 136-1.
*1254 Moreover, the Eleventh Circuit has twice dealt with similar circumstances and twice held that:
[u]nder Florida law [an insurer] [is] entitled to seek a judicial remedy to recover the amounts it paid [to a clinic operating in violation of the Clinic Act] and to obtain a declaratory judgment that it is not required to pay [the clinic] the amount of the outstanding bills.
Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1330 (11th Cir. 2016) (quoting State Farm Fire & Casualty Co. v. Silver Star Health & Rehab , 739 F.3d 579, 583-84 (11th Cir. 2013) ). Defendants have provided neither evidence nor argumentation to refute Plaintiffs' allegations and record evidence and thus, the Court finds that summary judgment in favor of Plaintiffs is appropriate on their unjust enrichment claim. Moreover, as Courts in this district routinely hold, "it is widely accepted that a defendant is not required to individually receive payments in order for a cause of action for unjust enrichment to exist." State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B & A Diagnostic, Inc. , 145 F.Supp.3d 1154, 1165 (S.D. Fla. 2015) (quotation omitted).
Thus, like the B & A Diagnostic Court , this Court finds that:
[b]ased on Defendants' unlawful conduct, State Farm paid claims which it was statutorily entitled to deny. Allowing Defendants to retain those benefits under these factual circumstances would violate all principles of equity.
Id. Thus, summary judgment in favor of Plaintiffs is appropriate as to their claim for unjust enrichment. As to declaratory judgment, the Declaratory Judgment Act provides:
[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
28 U.S.C. § 2201(a). As explained by the Supreme Court:
Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
Maryland Casualty Co. v. Pacific Coal & Oil Co. , 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). Here, Plaintiffs assert that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, namely whether Plaintiffs are required to pay Defendant Clinics the amount of the outstanding invoices. D.E. 136 at 18. As noted above, the Eleventh Circuit has already answered this question in the affirmative in nearly identical circumstances at least twice:
If Allstate showed that the clinics were in fact operating in violation of the Clinic Act, then it was entitled to recover the amounts it paid to the clinics and to obtain a declaratory judgment that it is not required to pay the clinics for outstanding bills that originated during the violation period.
Vizcay , 826 F.3d at 1330 (emphasis added); Silver Star Health & Rehab , 739 F.3d at 584 ("Under Florida law State Farm was entitled to seek a judicial remedy to recover the amounts it paid Silver Star and to obtain a declaratory judgment that it is not required to pay Silver Star the amount of the outstanding bills.") (emphasis added). Here, Plaintiffs have shown by citation to record evidence, including indictments and stipulated statements of fact in support of guilty pleas, that Defendant Clinics *1255 were not licensed by the HCAA and therefore they are entitled to a declaratory judgment that they are not required to pay any outstanding bills from those clinics arising from the violation period.
C. Fifth Amendment
Although not raised by Defendants, Plaintiffs note that in their responses to interrogatories and in response to Plaintiffs' complaint, Filenger, Greydinger, Rubinshteyn, and Varisco all invoked their Fifth Amendment privilege against self-incrimination. D.E. 136. As Plaintiffs rightly note, this does not bar the Court from granting summary judgment in Plaintiffs' favor. In fact, the Court may draw an adverse inference from these Defendants' invocation of their Fifth Amendment privilege. F.T.C. v. Glob. Mktg. Grp., Inc. , 594 F.Supp.2d 1281, 1287 (M.D. Fla. 2008) ("Rubin has conducted no independent discovery in this case and has not otherwise challenged the accuracy or authenticity of the FTC's evidence. Of particular importance is Rubin's responses to the FTC's request for admissions and answer to the FTC's complaint wherein he invokes his Fifth Amendment rights ... It is well-settled that a court, in the context of a civil case, may draw adverse inferences from a party's refusal to testify."); Arango v. U.S. Dep't of the Treasury , 115 F.3d 922, 926 (11th Cir. 1997) ("The Fifth Amendment does not forbid adverse inferences against civil litigants...."); United States v. A Single Family Residence & Real Property , 803 F.2d 625, 629 n. 4 (11th Cir. 1986) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.").
To be sure, "Courts may not draw adverse inferences, however, if it is the sole basis for [p]laintiff's prima facie case, or will cause the 'automatic entry of summary judgment.' " F.T.C. v. Transnet Wireless Corp. , 506 F.Supp.2d 1247, 1252 n.4 (S.D. Fla. 2007) (citing United States v. Premises Located at Route 13 , 946 F.2d 749, 756 (11th Cir. 1991) ). However, as explained above, this adverse inference is not the sole basis for Plaintiffs' case, rather there is a strong documentary record indicating that Defendants operated the Clinics without proper licensing, that Plaintiffs paid Defendants substantial sums for unlawful treatments from these clinics, and that there are also substantial outstanding bills from Defendants. Accordingly, the Court draws an adverse inference from Defendants Filenger, Greydinger, Rubinshteyn, and Varisco's invocation of their Fifth Amendment privilege.
V. Conclusion
Deeming Plaintiffs' statement of material facts as admitted, noting that Greydinger and Total do not oppose the Motion, and having reviewed the Record and the merits of Plaintiffs' Motion, the Court finds that for the reasons discussed supra, Plaintiffs are entitled to summary judgment. Accordingly, it is
ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment, D.E. 136, is GRANTED. The Court will separately enter final judgment pursuant to Federal Rule of Civil Procedure 58.
DONE AND ORDERED in Chambers at Miami, Florida, this _19th_ day of December, 2018.