[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13979

_____

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

Plaintiffs-Appellants,

*versus*

MICHAEL LAROCCA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:21-cv-02536-SCB-AEP

_____

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

Florida's Health Care Clinic Act requires medical clinics operating in the state of Florida to be licensed by the Florida Agency for Health Care Administration ("AHCA"), subject to several exemptions. *See* FLA. STAT. § 400.991. As relevant here, the Clinic Act exempts from licensure clinics that are "wholly owned by one or more licensed health care practitioners . . . if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws." *Id*. § 400.9905(4)(g). This exemption is known as the "wholly owned exemption."

On appeal in this case, the Appellants argue that the phrase "legally responsible" imposes an "affirmative duty" on clinic owners seeking exemption under the wholly owned provision to "ensure" that their clinics are "substantially complying" with all federal and state laws. According to the Appellants, a clinic owner's failure to achieve substantial compliance with all federal and state laws automatically renders any charges submitted by his clinics void and noncompensable under a different provision of the Clinic Act, which provides that a "charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed . . . is an unlawful charge and is noncompensable and unenforceable." FLA. STAT. § 400.9935(3). The Appellees, on the other hand, argue that the wholly owned exemption

imposes no such affirmative duty on an owner; on their interpretation of the exemption, a clinic owner is simply monetarily liable for any violations of law by his clinics. This appeal thus turns on the meaning of the phrase "legally responsible" within § 400.9905(4)(g), Florida Statutes.

The Florida Supreme Court, which is the final arbiter of Florida law, has not published a decision interpreting the statutory language at issue.[1] Given the impact on insurance law that our decision may have, principles of comity and federalism counsel that the Florida Supreme Court should decide this issue before we do. *See Steele v. Comm'r of Soc. Sec.*, 51 F.4th 1059, 1061 (11th Cir. 2022) (citing *WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1242 (11th Cir. 2020)). Thus, rather than predicting how the Florida Supreme Court would interpret the phrase "legally responsible" within the Clinic Act's wholly owned exemption, we respectfully certify the issue of Florida law discussed below to the Florida Supreme Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Michael Thomas LaRocca is a licensed chiropractor who has practiced in the chiropractic field for over fifty-five years. From 1977 until 2009, LaRocca ran a family practice, treating a wide range of patients. In 2009, LaRocca transitioned his business to specialize in treating patients involved in traumatic car accidents.

---

[1] The Florida intermediate appellate courts have also not addressed the statutory language at issue.

4                    Opinion of the Court                    23-13979

LaRocca expanded his practice over the next decade, and by 2019, he owned twelve chiropractic clinics across the Tampa Bay area, ten of which were wholly owned by him. These clinics submitted insurance claims to State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company ("State Farm") for chiropractic and medical services. State Farm provides automobile insurance coverage, including personal injury protection benefits ("PIP benefits") and optional medical payments coverage ("MPC benefits") (together, "no-fault benefits").

In 2019, after many years of operating without a license, LaRocca applied for an exemption from licensure for his clinics under the Clinic Act's wholly owned exemption. In his applications to AHCA, LaRocca attested that he is a licensed Florida health care practitioner, and that he has either 50% or 100% ownership interest in the clinics seeking exemption. He also attested that he "supervis[es] the business activities [of those clinics] and is legally responsible for [their] compliance with all federal and state laws." LaRocca's clinics subsequently received formal certificates of exemption from ACHA, affirming their exempt status under § 400.9905(4)(g) for a two-year period beginning on September 11, 2019.

On October 29, 2021, State Farm sued LaRocca, five of the chiropractic clinics he owns and operates, and several of his co-owners and employees,[2] lodging claims for fraud, civil conspiracy,

---

[2] The Defendants All Accidents Chiropractic Center, PLLC; LaRocca Chiropractic Centers, LLC; LaRocca Chiropractic Injury Center, LLC; LaRocca

unjust enrichment, violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and for declaratory relief. State Farm alleged that the Defendants' claims for reimbursement were part of a "fraud scheme" to collect benefits for services that were "not medically necessary" and that were not provided "to address the unique circumstances and medical needs of any individual patient." According to State Farm, the Defendants instead treated patients using a "predetermined treatment protocol," which was "designed and carried out to enrich [the] Defendants by exploiting patients' eligibility" for no-fault benefits.

On November 26, 2022, State Farm amended its complaint to add allegations that, from 2017 to the present, the Defendants were engaged in an illegal kickback scheme with various personal injury attorneys and primary care providers to induce and reward patient referrals, in violation of Florida's Anti-Kickback Statute, *see* FLA. STAT. § 456.054, and Florida's Patient Brokering Act, *see* FLA. STAT. § 817.505. Specifically, State Farm claimed that LaRocca violated the Anti-Kickback Statute and the Patient Brokering Act by paying "marketers," in cash or in kind, to develop relationships

---

Injury Centers LLC; and LaRocca Auto Injury Center LLC are collectively referred to by the district court as the "LaRocca Clinics." The Defendants Michael LaRocca, D.C.; Jason Hunt, D.C.; and Michael Major, D.C. are collectively referred to as the "Clinic Owners." The Defendants Blake LaRocca; Ruth Germaine Griffin, D.C.; Lori Rebein, NP-C; Cecilio Torres-Ruiz, M.D.; Savannah Jane Mayberry, D.C.; Antoinette Denise Stewart, D.C.; Tobias Bacaner, M.D.; and Mounir Semia, D.C. are collectively referred to as the "Employee Defendants." We adopt the same terminology here.

with and ultimately bribe referral sources to solicit and steer patients to the LaRocca Clinics.

In a new theory of liability, State Farm argued that the LaRocca Clinics had been operating in violation of the Clinic Act's wholly owned exemption for at least five years due to LaRocca's "fail[ure] to supervise the LaRocca Clinics to ensure they were in compliance with Florida's Patient Brokering Act and Anti-Kickback Act." In other words, State Farm now sought to proceed on two distinct theories of liability for each claim: 1.) that the Defendants provided medically unnecessary treatment (the "medical-necessity theory"); and 2.) that the LaRocca Clinics were operating in violation of the Clinic Act due to LaRocca and his co-owners' failure to ensure compliance with Florida law, rendering all of their charges for treatment unlawful and noncompensable. As relief, State Farm requested $2.1 million in compensatory damages and a judgment declaring that the LaRocca Clinics were not entitled to reimbursement for any of the unpaid charges submitted to State Farm for services performed at the LaRocca Clinics.

After some litigation, State Farm moved for partial summary judgment on its FDUTPA and unjust-enrichment claims and its request for declaratory relief based on its allegation that the Defendants violated the Anti-Kickback Statute and the Patient Brokering Act. State Farm argued that LaRocca had "implemented an elaborate marketing scheme, purposely running afoul of two statutes specifically prohibiting any attempt to use gifts to gain favor with patient referral sources." State Farm's theory, as hinted at in its

23-13979                Opinion of the Court                7

amended complaint, was that LaRocca's "failure to ensure" that his clinics were complying with the Anti-Kickback Statute and the Patient Brokering Act violated the Clinic Act's requirement (under the wholly owned exemption) that the owner of a health care entity be "legally responsible" for that entity's compliance with all federal and state laws, in turn "render[ing] all the [LaRocca] Clinics' submitted charges to [State Farm] . . . unlawful and non-compensable."

The district court rejected State Farm's bid for summary judgment on its kickback and patient-brokering allegations and rejected State Farm's argument that the Defendants violated their obligation to be "legally responsible" for the LaRocca Clinics' compliance with all federal and state laws. *See State Farm Mut. Auto. Ins. Co. v. LaRocca*, 2023 WL 6292422 (M.D. Fla. Aug. 22, 2023). The district court found that State Farm had failed to demonstrate that the phrase "legally responsible for the entity's compliance with all federal and state laws" "equates to failure to *ensure* compliance with federal and state laws." *Id*. at *4. And the district court appeared to agree with the Defendants that "it would lead to absurd results if the expectation was perfect compliance with all federal and state laws, absent which a clinic's license would be invalid and every claim submitted for reimbursement void." *Id*. at *5.

State Farm then moved for reconsideration, arguing that the Eleventh Circuit has construed "legal responsibility" within yet another provision of the Clinic Act, *see* FLA. STAT. § 400.9935(1)(a)–(i), to require a medical director to "substantially comply" with the

requirements imposed upon him for certain enumerated activities. *See Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326 (11th Cir. 2016). The district court denied the motion for reconsideration, explaining that "[t]he legal responsibility imposed on the medical director of a licensed clinic is limited to activities enumerated in the statute," whereas "[t]he responsibility placed on the owner of an exempt entity under [State Farm's] interpretation is much broader—ensuring compliance with all federal and state law." *State Farm Mut. Auto. Ins. Co. v. LaRocca*, 2023 WL 8434718, at \*3 (M.D. Fla. Oct. 11, 2023). The district court concluded that the statutory provisions being compared used intentionally different language. *Id.* (citing *Storey Mountain, LLC v. George*, 357 So.3d 709, 714 (Fla. 4th DCA 2023) ("[C]ourts are instructed to presume that the Legislature knows how to say what it means and that the differentiation in the language is intentional." (internal quotations omitted))).

In sum, the district court reasoned, the purpose of § 400.9905(4)(g) "is to identify who must own the entity in order to qualify for a wholly owned exemption and to delineate the owner/licensed health care practitioner's role as supervising the business activities and being legally responsible for the entity's compliance with all federal and state laws, not ensuring compliance with all federal and state laws such that an entity's violation of a federal or state law constitutes a violation of the [Clinic Act] or automatic revocation of the exemption from licensure." *Id.* at \*4. The parties then proceeded to a jury trial.

Shortly before trial, State Farm informed the district court at a pretrial conference that it was "not going to go forward on [its] direct kickback and patient brokering theories." On October 16, 2023, the parties went to trial on State Farm's claims of fraud, civil conspiracy, unjust enrichment, and FDUTPA, all under State Farm's alternative medical-necessity theory of liability. At the end of the three-week trial, the jury found that State Farm had not proven any of its claims as to any of the Defendants. Additionally, the jury recommended against finding that State Farm did not have to pay the unpaid claims submitted by the Defendants.

This appeal followed. Notably, State Farm does not challenge the jury verdict or any of the district court's trial rulings. Instead, State Farm challenges only the district court's order denying its motion for partial summary judgment and its order denying its motion for reconsideration. Despite its decision not to proceed with its direct-kickback and patient-brokering theory of liability at trial, State Farm now asks us to adopt its definition of "legally responsible" under § 400.9905(4)(g), under which an owner of a clinic violates the wholly owned exemption if he does not "assume[ ] a legal duty" to "ensure" that his clinics are complying (or at least "substantially" complying) with all federal and state laws. In its reply brief, State Farm adds that, "should this Court have any doubt" as to the meaning of the relevant statutory language, "it could certify to the Supreme Court of Florida the question of the Clinic Act's proper interpretation."

## II.    ANALYSIS

According to State Farm, the primary issue in this appeal is whether the wholly owned exemption of the Clinic Act, which provides that an owner must be "legally responsible for the entity's compliance with all federal and state laws," imposes a duty on a clinic owner to ensure his clinics' substantial compliance with federal and state laws in order to be entitled to any insurance payments.[3]  While State Farm answers this question in the affirmative, LaRocca argues that State Farm's construction is inconsistent with the plain language of the Clinic Act.  On LaRocca's interpretation of "legally responsible," a clinic owner has no affirmative obligation to ensure substantial compliance with the law; instead, a clinic owner who has been granted an exemption under the wholly owned exemption can be "ultimately held accountable for any violations of law by the clinic."

LaRocca provides the following example in an effort to prove the absurd results flowing from State Farm's interpretation: Imagine that a health care clinic hosts an outdoor grand opening for a new location, during which large numbers of helium balloons

---

[3] The remaining issue on appeal is whether the district court erred in holding that State Farm was not entitled to partial summary judgment or a trial on its direct-kickback and patient-brokering theory of liability.  State Farm argues that it presented "undisputed evidence" that "LaRocca intentionally and continuously paid kickbacks to induce and reward patient referrals and thus failed to be legally responsible for his clinics' compliance with Florida's Anti-Kickback Statute and Patient Brokering Act."  This issue likewise turns on the interpretation of "legally responsible"—the same dispositive question of state law that we now certify to the Florida Supreme Court.

are deliberately released into the air. Florida law makes it illegal, outside of several exceptions not relevant to this hypothetical, "for any person, firm, or corporation to intentionally release . . . balloons inflated with a gas that is lighter than air." FLA. STAT. § 379.233. Violations of this law are punishable by a civil penalty of $150. *Id*. § 403.413(6)(a). LaRocca argues that on State Farm's reading of the wholly owned exemption, all claims submitted by this health care clinic would immediately be rendered unlawful and noncompensable. On LaRocca's interpretation of the exemption, however, the result of the balloon-law violation would be that the owner would have to pay the $150 fine on behalf of his clinic, but all claims would still be payable.

In determining the plain meaning of a statute, "we consider the particular statutory language at issue as well as the language and design of the statute as a whole." *Paresky v. United States*, 995 F.3d 1281, 1285 (11th Cir. 2021) (internal quotations omitted). One way to figure out the plain and ordinary meaning of a statute is by looking at dictionaries in existence around the time of enactment.[4] *Id*.

According to the primary definition in Black's Law Dictionary, "responsible" means "[m]orally or legally answerable for the discharge of a duty, trust, debt, service, or other obligation; specif.,

---

[4] The Clinic Act was enacted in 2003 based on the Florida Legislature's finding "that the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers." FLA STAT. § 400.990(2).

marked by accountability to some higher authority for the execution of certain duties." *Responsible*, BLACK'S LAW DICTIONARY (11th ed. 2019). Black's Law Dictionary defines "responsibility" as "[t]he quality, state, or condition of being duty-bound, answerable, or accountable." *Responsibility*, BLACK'S LAW DICTIONARY (11th ed. 2019). Black's Law Dictionary also includes the following commentary from Hart on the concept of legal responsibility:

> [As for] the ambiguities of the word "responsibility," . . . it is, I think, still important to distinguish two of the very different things this difficult word may mean. *To say that someone is legally responsible for something often means only that under legal rules he is liable to be made either to suffer or to pay compensation in certain eventualities*. The expression "he'll pay for it" covers both these things. In this the primary sense of the word, though a man is normally only responsible for his own actions or the harm he has done, he may be also responsible for the actions of other persons if legal rules so provide. Indeed in this sense a baby in arms or a totally insane person might be legally responsible — again, if the rules so provide; *for the word simply means liable to be made to account or pay* and we might call this sense of the word "legal accountability."

*Id*. (emphases added) (quoting H.L.A. Hart, "Changing Conceptions of Responsibility," in *Punishment and Responsibility* 186, 196–97 (1968)); *see also Responsibility (Responsible)*, BOUVIER LAW DICTIONARY: COMPACT EDITION (2011) (explaining that "responsibility ([or] responsible)" is "[m]ost often . . . a synonym for legal

liability, because one is liable for acts or omissions for which one is responsible").

On the other hand, State Farm argues that we should look to an alternative definition of responsibility, more often used in common parlance, under which the word "responsible" means "[b]eing in charge of something; [being] appointed to look after something." *See Responsible*, Oxford English Dictionary Online (last visited March 18, 2025), https://doi.org/10.1093/OED/4489524050. Based on this definition and others like it, State Farm insists that the Florida Legislature must have intended to impose an affirmative duty on a clinic owner to "take charge" of his clinics' compliance with federal and state laws, including the Anti-Kickback Statute and the Patient Brokering Act.

While there is some reason to think that, "[w]hen used in the legal sense, 'responsible' means roughly 'subject to some kind of liability,'" *Am. Fam. Mut. Ins. Co. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016), without any requirement of control or direction, we find that the term "legally responsible" within § 400.9905(4)(g) is sufficiently open to interpretation such that the Florida Supreme Court is best suited to tell us what the term means. *See Steele*, 51 F.4th at 1061; *WM Mobile Bay*, 972 F.3d at 1251. Not only is the Florida Supreme Court the "ultimate expositor[ ]" of Florida law, *see Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), but the answer to this question impacts insurance in the state of Florida—a quintessentially state-law issue affecting a large number of Floridians. *Cf. Blue Cross &*

14                    Opinion of the Court                    23-13979

*Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) (certifying to the Alabama Supreme Court "because the decision will affect the rights of so many of the state's citizens, perhaps more than half," and because "[a]djustment of the rights and interests of insurers, health care providers, and insureds is a subject matter that falls squarely within the zone of traditional state regulatory concerns"). Moreover, certifying a dispositive state-law issue to a state supreme court allows us "to avoid making unnecessary *Erie*[5] 'guesses' and to offer the state court the opportunity to interpret or change existing law," if necessary. *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir. 1995); *see also Nielsen*, 116 F.3d at 1413 (noting that certification is a "valuable tool for promoting the interests of cooperative federalism").

Therefore, we certify to the Florida Supreme Court the following question:[6]

> Under Florida law, what does it mean to be "legally responsible" within the meaning of Fla. Stat. § 400.9905(4)(g)?

---

[5] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[6] The Florida Supreme Court "[m]ay review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." FLA. CONST. art. V, § 3(b)(6); *see also* FLA. STAT. § 25.031. Florida Rule of Appellate Procedure 9.150 "establishes the procedures governing those discretionary proceedings to review such certified questions." *Steele*, 51 F.4th at 1065 n.3.

Our phrasing of this question "is intended only as a guide." *United States v. Clarke*, 780 F.3d 1131, 1133 (11th Cir. 2015). It is not our intention to restrict the Florida Supreme Court's consideration of the issues or its scope of inquiry. *See WM Mobile Bay*, 972 F.3d at 1251. The Florida Supreme Court "may, as it perceives them, restate the issues and modify the manner in which the answers are given." *Id.* And, "[i]f we have overlooked or mischaracterized any state law issues or inartfully stated any of the questions we have posed, we hope the [Florida] Supreme Court will feel free to make the necessary corrections." *Id.* at 1251–52 (quoting *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1312 (11th Cir. 2000)).

## III.    CONCLUSION

For these reasons, we defer our decision in this case until the Florida Supreme Court has had the opportunity to consider and determine whether to exercise its discretion in answering our certified question. The entire record of this case, including the parties' briefs, is transmitted to the Florida Supreme Court.

**QUESTION CERTIFIED.**